## Case No. 12,777.

### SHERWOOD v. HALL et al.

[3 Sumn. 127.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1837.

PLEADING IN ADMIRALTY — DENIAL IN ANSWER — EVIDENCE NECESSARY TO OVERCOME — SHIPPING — MINOR — MARITIME TORT — MEASURE OF DAMAGES.

1. Courts of admiralty do not recognise the rule in equity, requiring two witnesses, or one witness and strong corroborative circumstances, in order to overcome the denial in the answer.

[Cited in note to Hutson v. Jordan, Case No. 6,959. Cited in The Australia, Id. 667.]

2. A master shipped a minor, who had run away from another vessel, under circumstances amounting to notice that the shipment was unauthorized by, and against the will of, the father. Held, that this was a tort of the master, for which the ship-owners were responsible in damages.

[Cited in Mendell v. The Martin White, Case No. 9,419; McGuire v. The Golden Gate, Id. 8,815; Cutting v. Seabury, Id. 3,521; The G. H. Starbuck, Id. 5,378; The Florence. Id. 4,880; Simpson v. The Ceres, Id. 12,881; The A. Heaton. 43 Fed. 596.]

[Cited in Gabrielson v. Waydell. 135 N. Y. 7, 31 N. E. 969.]

3. The measure of damages was held in this case to be the amount of the wages which the minor was earning on board the other vessel at the time of the abduction, down to the termination of the voyage; and $50 besides, to cover extra expenses and losses.

[Appeal from the district court of the United States for the district of Massachusetts.]

Libel [by William Sherwood against Isaac Hall and Thomas Curtis] in a cause of damage for abduction of the libellant's son on a voyage from Boston to Trieste, and back again to Boston. The facts of this case will sufficiently appear in the opinion of the court. At the hearing in the district court, the libel was, by consent of the parties, dismissed [case unreported] with a view to argue the same cause upon the appeal in this court.

Charles P. Curtis, for libellant.

Franklin Dexter, for respondents.

STORY, Circuit Justice. The present is a libel for a maritime tort, technically called a cause of damage, for the asserted abduction of the minor son of the libellant, and employing him as a seaman on board of the brig Rupee, owned by the respondents, and of which one John Freeman, Jr., was then master, on a voyage from Boston to Trieste, and Palermo, and back again to Boston. There is no dispute that the minor went on the voyage; that he was, at the time of the sailing of the brig. known to Freeman (the master) to be a minor, and to have run away from another vessel, then in the port of Bos-

---

[1] [Reported by Charles Sumner, Esq.]

ton; and that the circumstances were such that Freeman must have had information, amounting to full notice, that the shipment of the minor was unauthorized by, and against the will of, his father. All this is, as I think, fairly inferrible from his own testimony (he being made a competent witness by a release from the respondents), either from direct admissions in it, or from clear and determinate presumptions, arising from it. I think, that the testimony of Capt. Meeker goes farther, and establishes satisfactorily, that Freeman was expressly warned and admonished, not to take the minor on board; and that he would be held responsible for his conduct, if he did. Under such circumstances, it was clearly his duty not to take the minor on board; but to discharge him. After such notice, he acted at his peril, and if he were now before the court, he would have no right to complain, if his conduct was visited by severe, if not by exemplary damages. He had no right, after such notice, to rush blindly on his course; and if he chose to make no in'quiries, and to give no heed to his proper duty, the law might justly be taxed with a want of vigor, if it could not reach him in the shape of damages. But the present libel is brought against the respondents, as owners; and unless they had a direct or positive notice of the facts, there is not any strong reason for making them responsible, beyond a fair compensation in damages, for the misconduct of their master. The first question, then, that arises properly in the case, is, whether they had any such direct or positive notice. It has been argued, on behalf of the respondents, that they had no such notice; that in their answer to the libel, put in under oath, and responsive to the libel, they declare, that they never had any personal notice of the facts; and that, under such circumstances, their answer must stand for verity, unless overcome by two witnesses, or one witness and strong corroborative circumstances.

The argument proceeds upon the ground, that the same rule applies to an answer in courts of admiralty, responsive to the libel, as evidence, as does apply to an answer, responsive to the bill, in courts of equity. But no such rule has, to my knowledge, ever been recognised in courts of admiralty. The libellant in the admiralty has a right to require the respondent to answer, under oath, to the allegations of the libel; and also to put the respondent to answer special interrogatories, growing out of the allegations of the libel, in order to supersede the necessity of making any proof of facts, which are not contested or denied by the latter. This practice is borrowed from the civil law, where the actor, or plaintiff, first puts in his positions, answering to our libel; and then required the answer thereto by his adversary, the "reus," or defendant. After the answer of the latter was put in, the actor proposed special interrogatories to the defendant, re-

specting the matters of the positions, which interrogatories were technically called, in the civil law, libellus articulatus. See Gilb. Forum Rom. 90, 91, 218; Hare, Disc. 223; Story, Eq. Plead. § 39. In modern times, in the admiralty, at least in this country, the libel embraces the positions and the interrogatories of the civil law in one instrument, and therefore becomes emphatically a libel articulate (libellus articulatus), in the double sense of a narrative of facts, and a special interrogation as to these facts. It is true, that, in the civil law, two witnesses were ordinarily required to the material facts, if they were not admitted by the defendant, or were put in contestation by him. Thus, we find it laid down in the Code: "Simili modo sanximus, ut unius testimonium nemo judicum in quâcumque causâ facile patiatur admitti. Et nunc manifeste sancimus, ut unius omnino testis responsio non audiatur. etiamsi præclaræ curiæ honore præfulgeat." Cod. lib. 4, tit. 20, l. 9; 2 Browne, Civ. Law, 380, note 47; 2 Story, Eq. Jur. § 1530. This, it is observable, was a general rule of evidence, and wholly independent of the denials in the answers of the defendant. And I have not been able to find, in the civil law, any proof of the existence of the rule adopted by our courts of equity in relation to the authority of the answer of the defendant, as evidence in matters responsive to the allegations of the bill. The general rule of evidence in the civil law, requiring two witnesses, seems to have stood upon a broader ground. It was early repudiated in our courts of common law; and has never, to my knowledge, been admitted, as a controlling and fixed rule in our courts of admiralty, in modern times. In the case of The Thomas and Henry v. U. S. [Case No. 13,919], Mr. Chief Justice Marshall held the doctrine, that the answer of the defendant, though responsive to the libel, was not evidence for the defendant, as it is in equity. The learned judge of the district court of Maine (Judge Ware) has held the same doctrine as has my own learned Brother (Judge Davis) in this court. Many cases, I am fully persuaded, have been decided upon the satisfactory testimony of a single witness, against the positive denials of the answer in admiralty proceedings; and upon a late occasion, I did not hesitate to overrule the doctrine now contended for. It is from the importance of the point, as one of general interest to the profession, that I have dwelt upon it in this place, though nothing material to my present judgment turns upon it. I do not think, that positive and direct knowledge of the facts is, in the present case, satisfactorily brought home to the respondents. But I am of opinion, that constructive notice is brought home to them by the knowledge of their agent, the master of the Rupee. And, at all events, I hold, that, upon the well established principles of the maritime law, in cases of this sort, the owners are responsible for the torts of the master in acts, relative

to the service of the ship, and within the scope of his employment in the ship. This is so well settled, that I need not do more than to allude to a few passages in the excellent treatise of Lord Tenterden on the Law of Shipping (Abb. Shipp. pt. 2, c. 2, pp. 98, 99, §§ 9, 11), and to the authorities collected in the last American edition of the same work in 1829 (page 99). It will be found, that, in cases of collision, and injuries from negligence and illegal captures, and other torts from the fault of the master, the owners are, by the maritime law, made responsible for his acts and omissions of duty.

It remains only to add, that I think that the owners are responsible for the full wages which the minor was earning, as mate of the packet Hudson, at the time of the abduction, to the termination of the voyage on the brig's return to Boston, which I estimate, according to the evidence, to be at the rate of twenty-five dollars per month, deducting one month's advance wages at the beginning of the voyage, and other reasonable advances properly made to the minor in the course of the voyage, for necessaries, &c. To this sum I shall add fifty dollars, to cover extra expenses and losses, with costs.