KENZEL vs. KIRK and others.

Where the owner of a vessel charters the same to the master, for a certain period, the latter, covenanting to victual and man her at his own cost, is to be deemed the owner *pro hac vice*, and like any other charterer, is alone responsible for supplies furnished for the intended voyage.

But where the transaction is not a positive chartering, but a letting of the vessel to the master on shares, he agreeing with the owners to provide the supplies at his own cost, persons furnishing the vessel with supplies may recover of the owners, unless it appears they had knowledge, or reasonable means of knowledge, of the terms of the arrangement.

The master, in making his purchases, is not restricted to the port where the vessel lies. He has a discretion to purchase in a neighboring port, if he thinks proper.

APPEAL from a judgment rendered on the verdict of a jury. William H. Kenzel, the respondent, on the 1st September, 1856, was a store keeper in Jersey City, dealing with vessels. On that day, William C. Rogers, whom he knew to be master of the schooner Moonlight, came into his store and bought an outfit in provisions for the schooner, for a round voyage he was about making to the West Indies and other ports. The amount of the bill was $296.88. The bill was purchased in the name of the vessel, on a credit of three months. Nothing was said to Kenzel, at the time of the purchase by the master, about the master running the vessel on shares, nor did the plaintiff have any knowledge of the fact, but supposed he was dealing with the master of a vessel in need of supplies, and of course, to that extent, the accredited agent of the owners. At the time of the purchase the master told him she needed such stores, and told the plaintiff what voyage she was going on. The vessel lay at Elizabethport at the time of the purchase, and the goods were shipped by the plaintiff to and received on the schooner, and enabled her to make her voyage.

It appeared further, in proof, that the schooner had originally been built for Captain Rogers to command her, under an understanding that he was to do her business. Notwithstanding he had run the vessel on shares, yet he had been

in the habit of buying supplies for the vessel in ports where the owners did not reside, for which they paid, and also of having repairs made on her for which the owners paid, and of doing with the vessel as other captains did, and the owners never objected to his ordering repairs to be done. It also appeared in evidence that after this bill was contracted, all the owners, except Mr. Nelson, who owned one-eighth of the vessel, were willing to pay this bill. A motion for a nonsuit, or dismissal of the complaint, was denied. The court charged the jury, in substance, that the plaintiff was entitled to recover, unless it appeared he had knowledge, or reasonable means of knowledge, of how the vessel was sailed. The jury found a verdict for the plaintiff, for $344.41.

*C. Donohue,* for the appellants. I. The only ground or pretense of right to recover here is, that the master is presumed to be the agent of the owners, and can as such charge them. The presumption fails in this case, as the vessel must be where the supplies are furnished, to raise such a presumption. In this case she was not in the port where the supplies were furnished.

II. A debt can only be created and a defendant charged, on the ground that he or his agent made the purchase. In this case it is not pretended that the defendants personally made the purchase. Then, was Rogers the agent? We say not. (1st.) An agent must have an appointment or authority of the parties to act as such. Here he has none. (2d.) He must, in buying, not be buying for himself, but for some one else. Here he bought for himself. (3d.) He had no right or authority to bind the defendants, in any way. (4th.) The mere fact that the defendants are general owners, does not charge them. You must show the goods obtained for their use. Suppose he had run away in the vessel? Suppose he was under a written charter? (5th.) The doctrine that the master is the agent, and has authority, is only a presumption arising on two facts: first, that the defendants are owners,

Kenzel *v.* Kirk.

and using the vessel; and second, that he is the master. The essential fact that they are using the vessel fails. (6th.) Having the vessel and sailing her, as in this case, he was substituted for the owners. (*Webb* v. *Pierce*, 1 *Curtis*, 104. 3 *Kent's Com.* 138, 139.)

III. The court erred in admitting the evidence at folio 22. (1st.) That the plaintiff was not told that the vessel was sailed on shares. Notice to the plaintiff is immaterial. (*Reeve* v. *Davis*, 1 *A. & E.* 312. *Perry* v. *Osborn*, 3 *Pick.* 22. *Cutler* v. *Wisner*, 6 *Pick.* 335. *Spout* v. *Donnell*, 26 *Maine R.* 185.) (2d.) Admitting the witness to testify to his knowledge of what Kenzel did not know as to such fact. In admitting the witness to state on whose credit the goods were brought. The court erred in admitting evidence to whom Kenzel charged the goods.

IV. The court should have nonsuited the plaintiff, or dismissed the complaint.

V. Wooden was a proper person, and should have been joined as plaintiff. (*Code*, §§ 111, 117.)

VI. The complaint should have been dismissed. (*Perrine* v. *Hankinson*, 6 *Halstead*, 181. 3 *Kent's Com.* § 43, *p.* 33, *4th ed. Rice* v. *Austin*, 17 *Mass. R.* 197, 206. *Muzzy* v. *Whitney*, 10 *John.* 226. *Reynolds* v. *Toppan*, 15 *Mass. R.* 370. *Wool and Carpet Factory*, 12 *Conn. R.* 69; 14 *Pick.* 182; 20 *Wend.* 70. *Stedman* v. *Feidler*, 25 *Barb.* 612; *affirmed by Court of Appeals, December term.*)

VII. The verdict was against evidence, under the charge of the court. (1st.) The plaintiff had really notice. (2d.) One of the defendants was his father-in-law, and it certainly was within reasonable exercise of diligence to have found out who was owner, and how the vessel was sailed.

*D. McMahon*, for the respondent. I. The master of a ship is the confidential agent of the owners, and as such, in general, he appears to all the world in matters relating to the usual employment of the vessel, and to the means of employ-

ing her; the business of fitting out, victualling and manning the ship, being left wholly to his management in ports where the owners do not reside and have no established agent, and frequently, also, even in the place of their own residence. His character and situation, therefore, furnish presumptive evidence of authority from the owners to act for them in these cases; liable, indeed, to be refuted by proof that they, or some other person for them, managed the concern in any particular instance, and that *this fact was known to the particular creditor*, or was of such general notoriety that he may reasonably be supposed not to have been ignorant of it. The repairs and supplies, however, must be such as a prudent owner would have ordered or assented to if present. To this extent the master has power, it is insisted, to bind the owners personally, as well in the place where they reside as abroad. (1 *Conkling's Adm. Prac.* 73, 2d ed. *Abbott on Shipping*, pt. 2, ch. 3, §§ 2, 4. *Ship Fortitude*, 3 *Sumner*, 228. *Patterson* v. *Chalmers*, 7 *B. Monroe*, 595. *Pendleton* v. *Franklin*, 3 *Selden*, 508. *The Paragon, Ware's R.* 322. *Hardy* v. *Sproul*, 29 *Maine*, [16 *Shep.*] 258. *Webster* v. *Lechamp*, 4 *Barn. & Ald.* 352.) This principle is held by the court of appeals in *Provost* v. *Patchin*, (5 *Seld.* 235;) *Saxton* v. *Read*, (*Lalor's Sup. to Hill & Denio*, 323.)

II. In the case at bar, the plaintiff's proof tended to show that he sold the goods (which were necessaries) at the request of the master, on the credit of the vessel. (*Saxton* v. *Read, Lalor*, 330.) That he did not know that the vessel was run on shares. That the master who got the goods was to all appearances in charge and command of the vessel, to the same extent as other masters. That the vessel was built for him, and the master had ordered other repairs and supplies, which were paid for by the owners, without objection by them, and seven-eighths in value of the owners had ratified the master's authority by expressing their willingness to pay the bill. No proof was introduced by the defendants that masters of such vessels usually run on shares. The

learned judge below left the case to the jury on the distinction taken in 1 *Conkling's Adm.* 2d ed. 73, and by all the other elementary writers, to wit, "that in the absence of any notice to the plaintiff that the vessel was let on shares, or an opportunity by reasonable care and caution to ascertain the fact, the case presented would appear to be the ordinary one of the master of a vessel buying goods and necessaries for a vessel." (*Rich* v. *Coe, Cowper*, 636. *Arthur* v. *Schr. Cassino*, 2 *Story*, 94.) The jury found for the plaintiffs; and if the above authorities are good law, then the finding is conclusive. The exception taken by the defendants was to the whole charge, and therefore was too general. If any part of the charge was good, the exception was pointless.

III. The learned judge was right in refusing to nonsuit when the motion was first made, because, (1st.) All the grounds of the motion went to the question of authority of William C. Rogers, the master, to bind the defendants for necessaries for the vessel, which was one mixed of law and fact, and therefore could not be taken from the jury, conceding that a master who ran on shares had no right to bind the owners for supplies for the vessel; yet the case at bar went beyond and showed these further and additional facts on the question of authority, viz: That the schooner Moonlight was built for W. C. Rogers as commander, by the owners. That Rogers was in the habit of ordering supplies and repairs for the vessel, which the owners paid, and without objection on their part. That seven-eighths in value of the owners ratified his authority in this purchase, by promising to pay. (2d.) The motion made was a general one, to nonsuit, as to all the defendants. If it had been made to nonsuit as to the defendant S. C. Nelson, a different question might have been presented.

IV. The motion to dismiss the complaint was subsequently renewed after the defendants' evidence was in, on the ground before stated, and on the further ground that the contract set up in the complaint was not proved, but a sale by the

plaintiff; and another to the defendants was attempted to be proved; also that the plaintiff had not joined a proper party plaintiff. The court below properly refused to nonsuit. (1.) As to the points before taken, on the previous motion, the defendants' evidence strengthened the plaintiff's case, for they did not prove any fact in contradiction of the plaintiff's proof, which tended to show the additional authority given to Wm. C. Rogers, the master, adverted to in the last point, which they might have done by putting their owners on the stand. (2d.) The additional ground taken by the defense was, in effect, that there was a misjoinder of a co-plaintiff, because the witness was not a clerk of the plaintiff, but was in effect his partner. Conceding this to be so, yet the court properly refused to dismiss the complaint on that ground; for, (*a.*) Under the law before the code the nonjoinder of a co-promisee could be pleaded in abatement, or was ground of nonsuit, under the general issue, i. e. in actions on contracts under seal. (2 *Starkie*, 424. *Petersdorf's Abr. tit. Nonjoinder*, 752.) The nonjoinder of a co-promissor, however, could only have been taken advantage of by plea in abatement, and it was not ground of nonsuit. (4 *M. & S.* 475. *Petersdorf's Abr. tit. Nonjoinder*, 753.) (*b.*) Under the code the defect of parties plaintiff or defendant is placed on the same footing in one case as in the other, and can only be taken advantage of by demurrer when apparent on the face of the complaint, (§ 144,) or by answer, (§ 147.) If it is not so taken, then it is waived. (§ 148. *Zabriskie* v. *Smith*, 3 *Kernan*, 322, 336. *Mayhew* v. *Robinson*, 10 *How. Pr. Rep.* 162. *Ingraham* v. *Baldwin*, 12 *Barb.* 9. *Abbe* v. *Clarke*, 31 *id.* 238. *Baggott* v. *Boulger*, 2 *Duer*, 160, 650.) (*c.*) But it is contended by the defense it is a variance in the plaintiff's contract, as alleged and proved, to which we reply, 1st. The evidence, such as it is, was brought out on the cross-examination by the defense. It was their evidence. The plaintiff's evidence showed the contract of sale to have been made by Kenzel alone, so that on the

Kenzel *v.* Kirk.

plaintiff's and defendants' evidence, thus opposed, the court could not nonsuit. The case must be submitted to the jury; and, in submitting it to the jury, it was the duty of the defense to have requested the court to charge on that point, in order to avail themselves of it. This they failed to do. 2d. But suppose no objection to have been taken in form, in proper time, yet if it is good on the ground of variance, of what effect is section 148, which provides that the defense waives it by not taking it by demurrer or answer. Can the defense have an indirect benefit of such a point when they could not have it directly under section 148? 3d. Then, if it be considered a variance, it is not one which misled the defendants, and under section 169 may be disregarded, or might have been amended at once or treated as so done. (*Keese* v. *Fullerton*, 1 *Code Rep.* 52. *Depeyster* v. *Wheeler*, 1 *Sandf.* 719.) (*d.*) The objection, however, we claim to be untenable in fact. The witness, Wooden, shows that the business was conducted in the name of the plaintiff. That as his salary he drew so much a year, and was compensated by a certain proportion of the profits—a common mode of com-. pensating clerks in the city of New York—but it did not appear that he was to share in the losses, nor that the concern made any profits; and his statement that he was interested in the goods and business of the store, is explained by his subsequent testimony, which shows the nature of his interest; and which is lastly adverted to.

V. The defendant did not explain, by evidence or otherwise, what was meant by a "running on shares." For all that appeared in the case, the master had all the independent authority of other masters. They had left the master in the uncontrolled operation of the vessel, sent him out into the world clothed with apparent authority, and because a loss ensued by his mismanagement they seek to bring that consequence, not on themselves, but on those who dealt with their agent in good faith, without notice of his restricted authority. We submit that it would be a subversion of well defined

legal principles to say that the mere proof of "running on shares," without bringing it home to the seller of the goods at the time of the sale, is to relieve them from the consequences of the master's action. Public policy and the true interests of commerce demand that the rule herein contended for should be preserved.

VI. It is no objection that the vessel (the Moonlight) was not lying at Jersey City at the time the supplies were got, but was at Elizabethport. (*Lalor's Sup.* 323. 5 *Selden,* 235.) She was in conterminous waters, and in the same state. She needed the supplies. Even if it were an objection, the defense did not raise it on a motion for nonsuit, or by way of a request to charge. He stated it only as a reason why the plaintiff's charge in the books should not be introduced. It was one which properly ought to have been raised in the manner before adverted to. It was not an objection that went to the introduction of testimony, but was one that went to its effect when introduced.

*By the Court,* CLERKE, P. J. It will not be disputed, I presume, if the owner charters his vessel to the master for a certain period, he, covenanting to victual and man her at his own cost, is to be deemed the owner *pro hac vice, (Hallett v. Col. Ins. Co.,* 8 *John.* 272 ;) and he, like any other charterer under similar circumstances, is alone responsible for supplies furnished for the intended voyage. But it is contended, on behalf of the plaintiff, where the transaction is not a positive chartering, but a letting of the vessel on shares, although the master engaged with the owners to provide the supplies at his own cost, that the owners are still liable, unless the person from whom they are purchased is aware of the arrangement.

The distinction taken by the elementary writers seems to be very frequently, though not invariably, recognized. It is laid down by them that in the absence of any notice to the plaintiff that the vessel was let on shares, or of an opportu-

Kenzel *v.* Kirk.

nity by reasonable care and caution to ascertain the fact, the case would appear to be the ordinary one of the master of a vessel buying necessary supplies for the voyage.

The charge of the judge was in conformity with this rule, which, I think, is tenable on principle and the weight of authority. Indeed the evidence would have authorized him to charge still more favorably for the plaintiff. The master, in his deposition, testifies that he ran the vessel on shares; that he was to receive one half the earnings, and to pay one half the disbursements. This seemed to have made it a joint concern. The owners, even as between them and the master, were to be liable for one half of the disbursements incurred, it is to be presumed, either for repairing, or manning, or for furnishing supplies. To be sure, he says, in answer to the question, "Who was to provision the vessel?" that he was. Yet as provisioning was certainly a part of the disbursements, and as he expressly says one half the disbursements were to be defrayed by the owners, I cannot believe that he meant to say that he was to provision the vessel exclusively out of his share, at his own expense; but that it was to be done through his agency and personal attention. It also appears from his testimony that the owners dismissed the master at Key West, and that they took possession of the vessel, and of the stores purchased of the plaintiff, which remained unconsumed.

When, in addition to this, we consider that the credit was expressly given to the vessel; that there was nothing in the transaction to induce the plaintiff to suppose that there was any special arrangement between the owners and master; that he had ordered repairs which were paid for without objection by the owners, and that seven-eighths of them in value had ratified the master's authority, by expressing their willingness to pay this demand, I think if the judge erred at all, it was in not telling the jury that there was no testimony in the case to exempt the owners from their general liability.

With regard to the objection that the stores were pur-

chased in Jersey City, instead of Newark, I am not aware that the master is restricted in his purchases to the port where the vessel lies. He has a discretion to purchase in a neighboring port if it is more convenient for him to do so, and if he can deal there more advantageously for the owners. Of this he is the judge.

The other objections are equally untenable. The judgment should be affirmed, with costs.

[New York General Term, November 4, 1861. *Clerke, Sutherland* and *Mullin,* Justices.]