## McCready & Mott *vs.* Thorne and others.

Where a vessel is run by the master, on shares, it is not a chartering, nor does the master become owner, for the time being; and parties dealing with him are justified in considering him clothed with the usual authority of a master; especially where one of the owners indorsed the action of the master, in dealing with such parties, before they gave him credit.

Under such circumstances, the master can bind the vessel and her owners, for supplies and necessaries furnished.

Where the master testifies that money advanced to him, and expended, by the plaintiffs, was for the account of the vessel; that the plaintiffs rendered him an account, and he certified it to be correct; the mere fact that he is unable to state, after the lapse of several years, what the money was expended for, will not weaken the force of such testimony.

THE plaintiffs, who were ship brokers in the city of New York, in the latter part of 1855, advanced certain cash to the captain of the schooner "Susan Orleans," then lying in the port, to enable him to pay the port charges of his vessel; and they also paid sundry bills against the vessel, and rendered personal services for said vessel, at the captain's request. The "Susan Orleans" was at that time owned by the defendants, one of whom, Charles E. Thorne, who lived in New York, was the *ship's husband;* the other owners

residing in New Jersey. The indebtedness to the plaintiffs was incurred at the instance of said Thorne, and upon an express promise made by him, as one of the owners, that the *owners of the vessel* should be responsible for it. The whole of the money advanced by the plaintiffs to the captain was used by him in defraying *port charges* of the vessel, and nearly all the other items of the plaintiffs' account were also *port charges*. The vessel, at the time the plaintiffs' account was run up, was let by the owners to the captain, on shares, the captain agreeing with the owners to victual, and man and sail the vessel at his own expense, to *pay port charges out of the earnings of the vessel*, and then to divide the balance of her earnings between himself and the owners, in equal moieties. The special contract between the master and owners of the vessel was, however, entirely unknown to the plaintiffs at the time the indebtedness accrued. After the return of the vessel from her contemplated voyage, the captain duly accounted with Thorne as one of the owners and ship's husband, for her earnings.

The action was tried before a referee, who, in his report, allowed the plaintiffs only for the items of the account which were established to be *port charges*.

From the judgment entered upon said report, the defendants appealed.

*I. T. Williams*, for the appellants.

*J. S. Jenness*, for the respondents.

*By the Court*, LEONARD, P. J. It appears from the evidence, that Capt. Cathcart *run* the schooner Susan Orleans *on shares with the defendants, who were the owners,* but the plaintiffs were ignorant of the arrangement. The referee has so found the facts. The defendant Thorne made this agreement with Capt. Cathcart, acting for himself and

the other two defendants, who were also part owners, and resided in the interior, at some distance from the port of New York, where the vessel lay and Mr. Thorne resided. The other owners expressed no dissent to this employment of the vessel, and they are therefore to be deemed as concurring, and are liable for their share of the expenses, and entitled to a share of the profits. (*Gould* v. *Stanton,* 16 *Conn. R.* 12.)

Where a vessel is run by the master, on shares, it is not a chartering, nor does the master become owner for the time being. The plaintiffs were justified in considering him clothed with the usual authority of a master, especially as Mr. Thorne indorsed the action of the captain in dealing with the plaintiffs, before they gave him credit.

Under these circumstances the master can bind the vessel and her owners for supplies and necessaries furnished.

Captain Cathcart testifies, in substance, that the money advanced to him, and expended, by the plaintiffs was for the account of the schooner. The plaintiffs rendered him an account, and he certified it to be correct. There is nothing calling this evidence in question, except the failure to be able to state, at the time he testified, after the lapse of several years, what the money was expended for. The fact that he certified to its correctness, when the account was fresh in his recollection, is pretty good warrant for him to testify that the money was advanced by the plaintiffs for the account of the schooner, and sustains the facts, in this respect, as found by the referee. The items are such as to indicate a probability that they were necessary expenditures, so far as the articles were paid for directly by the plaintiffs. How the captain expended the money paid to him by the plaintiffs, is not detailed ; but the disbursement of it for the vessel, made by him, is not impeached, except by his inability to state it, as before remarked.

There appears to be an error in the computation of interest, amounting to $9.40. This amount the plaintiffs must remit.

The judgment should be reversed, and a new trial had before the referee, unless the plaintiffs within twenty days remit the said sum ; and in the event of their so remitting the amount, the judgment should be affirmed, with costs.

[NEW YORK GENERAL TERM, April 3, 1867. *Leonard, Sutherland* and *Ingraham*, Justices.]