# Holt *v.* Cummings.

1. The engineer of a tug-boat employed in the Delaware Bay and River is engaged in a maritime service, and is entitled to the rights and benefits conferred on seamen by the law maritime.

2. One of such benefits is the right to receive medical attendance and medicines at the cost of the vessel, when sick or injured. during his service.

3. Such right, under the law maritime, is not taken away or limited by the United States Statutes (Rev. St. 4585, 4803) providing for the collection from vessels of forty cents per month for each seaman, as a fund for the relief of sick and disabled seamen, and appropriated for the expenses of the. marine hospital service. The said Acts afford an auxiliary resource for sick or disabled seamen.

4. Where the engineer of a tug-boat was injured by an explosion on the boat while in the home port, and the officer in charge of the vessel summoned a physician who treated the man, first on board the tug, and afterwards at his home, whither he was removed at his own request, the vessel owner is liable to the physician for such service and for medicines supplied.

January 25th 1883.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 3, of *Philadelphia county :* Of January Term 1883, No. 47.

Assumpsit, by Joseph J. Cummings, M.D., against Handy P. Holt, Richard Banks and John Banks, co-owners of the steam-tug *J. B. Woodward.*

At the trial, before YERKES, J., the following facts appeared :—On August 14th 1881, an explosion occurred on the steam-tug, while in the port of Philadelphia, where she belonged, by·which John Harrigan, the engineer, employed by the defendants, was scalded and. otherwise injured.

At the request of the captain the plaintiff, a physician, dressed the injured man's wounds. The captain then sent for a carriage and offered to send the man to a hospital, but at his own request he was taken to his home in the city, where the plaintiff continued to attend ·him professionally for a period of six weeks. Plaintiff then presented his bill, for medical attendance and medicines furnished, to the owners of the tug, who

[Holt v. Cummings.]

refused to pay him, except for his services in dressing the man's wounds at the scene of the accident. He then brought this suit.

The judge charged the jury as follows :—

" This is a new question to me, and for its proper solution needs more time than can be given to it at this time. To put it in the course of proper determination, I charge you that the owners of a coasting vessel, such as in this case, are liable for the medical attendance to a sick seaman, liable to such attendance if taken to his home from the vessel ; and that the Act of Congress relative to hospital dues does not change the law in this respect."

Verdict for plaintiff, for $100. Upon motion for a new trial the two judges sitting in banc, LUDLOW, P. J., and YERKES, J. (FINLETTER, J., being absent holding a court of Quarter Sessions), being divided in opinion, a new trial was refused, and judgment was entered on the verdict.

The defendants thereupon took this writ of error, assigning for error the charge of the court, as above.

*Walter George Smith* (*Francis Rawle* with him), for the plaintiffs in error.—While it may be doubted whether the ancient maritime law applicable to seamen applies to this case, we admit it was proper that the injured engineer should receive medical attendance ; but his right does not extend to refusing to stay on board the vessel, or to go to a hospital, and to elect to go to his own home and require the vessel owner to pay the expenses of his treatment there. The Acts of Congress (Rev. St. U. S. §§ 4585, 4803), provide for the case, and although there is no " marine hospital " in Philadelphia, the local hospitals receive injured seamen, on a permit from the collector of the port, for gratuitous treatment. Such treatment was offered to and refused by Harrigan, and under these circumstances the ship-owners are not responsible for the expenses of his cure : Horan v. Gordon, 2 Mason 541 ; The Brig George, 1 Sumner 151 ; Pierce v. The Enterprise, 1 Gilpin 438 ; Holmes v. Hutchinson, Id. 448 ; Walton v. The Neptune, 1 Peters Adm. 142, 152 ; Richardson v. Juillette, 2 N. Y. Leg. Obs. 23.

*Henry C. Loughlin* (*Jos. P. Kennedy* with him), for the defendant in error.—At common law, the liability of the owner of the vessel for medical attendance to sick seamen is well settled, and it is immaterial that the sickness occurs at the home port : 2 Parsons on Shipping and Admiralty, 81 ; Desty's Shipping and Admiralty, sec. 154 ; The Nimrod, 1 Ware 19 ; Reed v. Canfield, 1 Sumn. 195 ; The Atlantic, Abb. Adm. 451 ; Ringgold v. Crocker, Abb. Adm. 334.

[Holt *v.* Cummings.]

The engineer of a tug-boat is entitled to all the rights of a seaman : The Sultana, 1 Brown 13 ; Wilson *v.* Ohio, Gilpin 505 ; The Caleb, 9 Ben. 159 ; The Hudson, 8 Fed. Rep. 167; In re North America, 5 Ben. 486 ; Allen *v.* Hallet, Abb. Adm. 576 ; Gurney *v.* Crockett, Id.·490 ; Trainer *v.* The Superior, Gilp. 514 ; The Ocean Spray, 4 Sawyer 105 ; The Minna, 11 Fed. Rep. 759.

The Acts of Congress cited by the plaintiffs in error have not affected the common law liability : Curtis on Rights of Sea-· men 117 ; 2 Parsons on Shipping 80 ; Reed *v.* Canfield, 1 Sumn. 200 ; Harden *v.* Gordon, 2 Mason 548. Those Acts, being in the nature of a supplemental remedy to seamen, should be liberally construed, and cannot deprive them, by implication, of a more extensive legal remedy. It is not shown that the physician in this case had any notice of the alleged offer to send the injured man to a hospital, and of its refusal. He was originally employed by the captain, and continued his services on the faith of the owner's liability, and never received notice to discontinue his services.

Mr. Justice CLARK delivered the opinion of the court, October 31st 1883.

It is a general and well-established principle, affecting the rights and responsibilities of seamen, that the shipping contract, excepting as it may be modified by express stipulation, includes the provisions of the law maritime ; made to be performed upon the highway of the seas, it must be read in the light of that peculiar system of law, which particularly relates to the affairs of the sea : The Atlantic, 1 Abbott's Adm. 476 ; The Crusader, Ware 448 ; Jameson *v.* The Regulus, 1 Pet. Adm. Rep. 212 ; Curtis on Merch. Seam. 106. This system was referred to, as it was then understood, in the second section of the third article of the constitution of the United States, and, thus adopted, it became the basis of the maritime law of the United States, and operates uniformly throughout the country : The Lottawanna, 21 Wallace 558. Whilst, however, the maritime law of the United States is thus founded upon the general law maritime, as a basis, so far as unaffected by legislation, it depends, in some respects, upon what has been received as law and in the maritime usages of this country, as minor provisions vary somewhat in different countries, according to the type and genius of the government in which it is applied. This branch of the law, although peculiarly within the cognizance of courts invested with maritime jurisdiction, may be referred to in all our courts on maritime questions, as in general the courts of common law have concurrent jurisdiction

with the admiralty in those cases which are promoted on the instance side of the latter court.

The right of seamen to be cured of sickness, or any injury received in the ship's service, at the expense of the ship, is a rule regarded in the maritime law as forming part of the contract, and the decisions of the courts of the United States, and of the states, sanction the rule: Laws of Oleron, Art. 7; Laws of Wisbuy, Art. 19; Laws of the Hanse Towns, Art. 39; Jacobsen 144; Abbott on Shipping, 258; Curtis on Merch. Seam. 106, 111; The Atlantic, 1 Abbott's Adm. 476; The Brig George, 1 Sumner 151; Reed v. Canfield, Ibd. 195; Holmes v. Hutchinson, Gilpin 447; Pierce v. Patton, Ibid. 435; Harden v. Gordon, 2 Mason 541.

John Harrigan was an engineer employed by the plaintiffs in error upon the tug-boat J. B. Woodward. The home port of this tug was Philadelphia. As to the extent of the voyages made by it, we are not informed. It is stated upon the one side that they rarely exceeded four hours; on the other, that they extended to ports on the Chesapeake and the Atlantic coast. If either statement be correct, we are inclined to believe that, under the decisions of our courts, this was a maritime service. A maritime contract is defined to be "one which relates to the business of navigation upon the sea, or to business appertaining to commerce or navigation, to be transacted or done upon the sea or in seaports:" 2 Bouvier 154. Contracts relating to the inter-state navigation of our inland lakes and great rivers, are not, in a strict sense, maritime contracts, but they are within the admiralty jurisdiction, to the same extent as though they were arms of the sea, and subject to tidal influences: The Propeller, Genesee Chief, 12 Howard 443; Fretz' Appeal, Ibid. 466. Thus, therefore, navigable rivers, where the tides of the sea ebb and flow, are clearly within the admiralty jurisdiction: Smith v. The Pekin, 1 Gilpin 203; Wilson v. The Ohio, Ibid. 505.

The peculiar privileges and protection, afforded by the maritime law, are only however secured to seamen. Common sailors only were originally termed seamen, but the rights of seamen, under the rulings of American courts, from time to time, have been extended to the mate, surgeons, stewards, engineers, cooks, clerks, carpenters, firemen, deck-hands, porters, and chambermaids. All these classes of employees have been allowed to sue, in the admiralty, as mariners, or as persons rendering maritime services, under a maritime contract: 1 Peters Adm. 246; 2 Peters Adm. 268; Wilson v. The Ohio, Gilpin 505; 1 Conkl. Adm. 107; 2 Pars. Marit. Law 582; The Sultana, 1 Brown 13; Steam Propeller M. M. Caleb, 9 Ben. 159; The Hudson, 8 Fed. Rep. 167; North America, 5 Ben.

486 ; Allen *v.* Hallet, Abb. Adm. 576 ; Gurney *v.* Crocket, Ibid. 490.

In the case of Trainer *v.* The Superior, Gilpin 514, the general rule is given, that all those who contribute to the preservation of the vessel, or were employed in navigating her, are entitled to the rights of mariners ; whilst in the cases of The Ocean Spray, 4 Sawyer 105, and Minna, 11 Fed. Rep. 759, the rule is extended to all hands employed on the vessel in furtherance of the main object of the enterprise in which she is engaged, except the master.

It appears, therefore, clearly that the service of John Harrigan was a maritime service. The injury resulted from an explosion, caused by the giving way of the cylinder head, on board the tug-boat, on the 14th August 1880, whilst he was in the actual service of the ship. The injury did not occur from any negligence or fault of the engineer.

As a seaman, he was entitled to be cured at the expense of the ship, and for the expenses of his cure, as part of the wages of his service, he had a triple remedy : against the vessel, the owners and the master.

At the time of the injury, Handy P. Holt, the captain of the tug, was absent in the country ; Captain Murry was in charge. This officer went, in person, for Dr. Cummings, and asked him to attend the injured man, which he did. After the wounds were dressed, he was, at his own request, sent, in charge of the steward, to his own home, in the city of Philadelphia, where the physician continued his visits, until a permanent cure was effected.

It is urged by the plaintiffs in error, however, that by certain statutes of the United States, it was provided as follows :

Act March 3d 1875, Rev. Stat. U. S. 4585 :—There shall be assessed and collected, by the collectors of customs, at the ports of the United States, from the master or owner of every vessel of the United States, arriving from a foreign port, or of every registered vessel employed in the coasting trade, and before such vessel shall be admitted to entry the sum of forty cents per month, for each and every seaman, who shall have been employed on such vessel, since she was last entered at any port of the United States ; such sum such master or owner may collect and retain, from the wages of such seamen."

Act 29th June 1870, Rev. Stat. U. S. 4803 :—" All such moneys shall be placed to the credit of ' the fund for the relief of sick and disabled seamen ; ' of which fund separate accounts shall be kept in the treasury. Such fund is appropriated for the expenses of the marine hospital service, and shall be employed, under the direction of the secretary of the treasury, for the care and relief of sick and disabled seamen, employed

[Holt *v*. Cummings.]

in registered, enrolled, and licensed vessels of the United States."

It is alleged that the tug-boat J. B. Woodward, was within the provision of these statutes; that the hospital dues were paid, and that the seamen upon the tug, if injured in the service of the same, upon proper application, were entitled to free hospital service in the City of Philadelphia; that the captain in charge tendered the injured man this service, which he refused to accept and requested to be sent to his own house, and that the J. B. Woodward, its owners and officers were therefore absolved from any further liability for his cure.

It will be observed that as the master or owner is authorized to deduct the sum so collected, from the seamen's wages, " the fund for the relief of sick and disabled seamen," thus provided, is created by the moneys of the seamen themselves, and not by the owners or masters of vessels, in relief of their liability under the law maritime. Besides, the hospital service of the United States is confined to our own ports, and is maintained in but few of these; and non constat that the sums collected and paid over, as hospital dues, will be adequate for the support of the service where it is thus provided for; whereas the provision of the maritime law secured relief in all the seas and sea ports upon the globe. It cannot be pretended, therefore, that seamen, injured in the ship's service, who, by the maritime law, had a right to be cured at the ship's expense, must accept, in lieu of that right, a provision so inadequate. The provisions of the Acts of Congress, above recited, cannot be regarded as repealing the ancient maritime provision, referred to, but must be treated as simply auxiliary to it. The provision for hospital dues enables seamen, at their own expense, to increase their opportunities for medical treatment, and provides an additional safeguard for their own protection, when the vessel and its owners are perhaps in foreign seas, or cannot or will not extend the aid which the law requires.

This view of the effect of the several Acts of Congress, in relation to hospital dues, has been adopted in a number of cases in the admiralty courts: Reed *v*. Canfield, 1 Sumn. 200; Harden *v*. Gordon, 2 Mason 548; see also, Curtis on Rights of Seamen, p. 117; Parsons on Shipping and Admiralty, vol. 2, page 80, where the same construction is approved.

When the physician, Dr. Cummings, was called and came, the patient was in the tug-boat, and the first treatment was given there; the right of the seaman and the responsibility of the ship and its owners were then undoubted. Of the circumstances of the removal, it is not shown that the physician had any notice; of the tender and refusal of the hospital service it does not appear that he knew anything. No notice was subse-

quently given, and the physician had a right to assume that the rights and the responsibilities of the parties continued. The claim here is for medicines and medical attendance only, there is no claim for nursing, board or other service during illness.

If, therefore, the engineer, Harrigan, was not obliged to accept the tender of hospital service, under the Acts of Congress recited, and he was offered no other, his request to be taken to his own house, when there was no provision for him on the boat, was certainly not an unreasonable one, especially as there is no proof that medical attendance was more expensive there than elsewhere.

The judgment is therefore affirmed.