JAMES T. SCARFF, Respondent, v. BENJAMIN F. METCALF et al.,
Appellants.

In the performance of the duty, imposed by maritime law upon the owners
of a vessel, of rendering such care and medical aid to seamen employed
thereon as circumstances will admit, the master stands as the agent and
representative of the owners, and his negligence is theirs.

A mate, although an officer, is a seaman; and while both he and the master
are fellow servants of the owner, they are not such in respect to the
owner's duty to the seamen which the master performs.

In an action against the owners, therefore, for neglect of the master in the
performance of such duty, it is not a defense that the neglect was that of
a fellow servant.

Where there is a charter of a vessel the general owner still is responsible to
the seamen for the performance of said duty, unless there has been an
actual demise of the vessel, such as to take from the owners all possession,
authority and control.

Where, therefore, a vessel was sailed by the master, one of several joint
owners thereof, under an arrangement that he should sail it on shares,
pay for victualing, manning and furnishing supplies, the other
owners having nothing to do therewith. *Held,* that this was not an
actual demise, and that all the joint owners were liable to the mate of the
vessel for damages sustained by reason of the neglect of the master to
furnish and render to him necessary medical attendance and care.

*Taggard* v. *Loring* (16 Mass. 336); *Cutler* v. *Winsor* (6 Pick. 335) disap-
proved.

*Hallet* v. *C. Ins. Co.* (8 John. 272); *Thorp* v. *Hammond* (12 Wall. 408)
distinguished.

(Argued June 30, 1887; decided October 18, 1887.)

APPEAL from judgment of the General Term of the Supreme
Court in the second judicial department, entered upon an order
made May 11, 1885, which affirmed a judgment in favor of
plaintiff entered upon a verdict. (Reported below, 36 Hun,
202.)

This action was brought by plaintiff, who was mate of the
barkentine owned by defendants jointly, to recover damages
alleged to have been caused by their negligence in omitting to
provide him with proper and adequate medical attendance and
care when sick.

The defendants, Yates and Metcalf, alone were served with

the summons, and they appeared and answered separately. Metcalf set up as a defense that the vessel was chartered to Yates, who alone had the custody, management and control thereof.

The material facts are stated in the opinion.

*Joseph A. Shoudy* for appellants. The defendant Metcalf was not responsible for the acts of the defendant Yates during the voyage. (*Blackwell* v. *Wiswell*, 24 Barb. 355 ; *King* v. *N. Y. C. & H. R. R. R. Co.*, 66 N. Y. 184 ; *Hexamer* v. *Webb*, 101 id. 383 ; *Hallett* v. *Col. Ins. Co.*, 8 John. 272 ;. *Tuckerman* v. *Brown*, 17 Barb. 191 ; *Felton* v. *Deall*, 22 Vt. 170 ; *Ladd* v. *Cholard*, 1 Ala. 366 ; *Macy* v. *Wheeler*, 30 N. Y. 241.) When a vessel is employed by the master under an agreement by which he is to man and victual the vessel, he is the owner *pro hac vice*. (*Thorpe* v. *Hammond*, 12 Wall. 408 ; *Thomas* v. *Osborne*, 19 How. [U. S.] 22 ; Abb. on Ship. Marg. 35, *n.; Hallett* v. *Col. Ins. Co.* 8 John. 271 ; *Cutler* v. *Wisner*, 6 Pick. 335 ; *Thompson* v. *Hamilton*, 12 id. 428 ;. *Manter* v. *Holmes*, 10 Metc. 402 ; *Taggard* v. *Loring*, 16 Mass. 336 ; *Emery* v. *Hersey*, 4 Greenl. 407 ; *Cutter* v. *Thurlo*,. 20 Me. 213 ; *Reynolds* v. *Tappan*, 15 Mass. 370 ; *The Phebe*, 1 Ware, 266 ; *Thompson* v. *Snow*, 4 Greenl. [Me.] 264 ; *Skolfield* v. *Potter*, 2 Ware, 394 ; *Blake* v. *Ferris*, 5 N. Y. 49 ; *Martin* v. *Tribune Ass'n*, 30 Hun, 392 ; *Hexamer* v. *Webb*. 101 N. Y. 383.) The plaintiff and Yates were. fellow servants and the defendant Metcalf was not responsible to one of the servants for the negligent acts of the other. (*Crispin* v. *Babbitt*, 81 N. Y. 521 ; *McCosker* v. *L. I. R. R. Co.* 84 id. 77 ; *Slater* v. *Jewett*, 85 id. 61 ;. *Murphy* v. *B. & A. R. R. Co.* 88 id. 146.) It does not make any difference that the one by whom the injury was caused was in command over the one injured, and has the power of employing and discharging. (*Malone* v. *W. T. Co.* 5 Biss. 315 ; *Malone* v. *Hathaway*, 64 N. Y. 5 ; *Wilson* v. *Merry*,. L. R., 1 Scotch Div. App., 326 ; *Matthews* v. *Case*, 61 Wis. 491.) The mere omission to discharge a contract obligation has been held to be actionable negligence. (*Harden* v. *Gordon*,.

2 Mason, 547; *Reed* v. *Canfield*, 1 Sumn. 197; *The Ben. Flint*, 1 Abb. [U. S.], 129; *The Forest*, 1 Ware, 433; *The Nimrod*, id. 9, 11, 12.)   The plaintiff was erroneously allowed to recover consequential damages.   (*Chadwick* v. *Woodward*, 12 Daly, 399; Mayne on Damages, 26; *Middlekauff* v. *Smith*, 1 Md. 329; *Forte* v. *Oundorff*, 7 Heisk. 167; *Academy of Music* v. *Hackett*, 2 Hilt. 234.)   Only such damages as are the primary and immediate result of the breach of contract are to be considered.   (Mayne on Damages, 8; 1 Sedgwick on Damages, 90.)   The rule of damages in civil actions does not depend upon the form of the action.   (*Baker* v. *Drake*, 53 N. Y. 211; *Stapenhorst* v. *Am. Man. Co.* 15 Abb. [N. S.], 357.)

*William Sullivan* for respondent.   The State Courts have concurrent jurisdiction with the United States District Courts of action *in personam* founded on maritime torts or contracts, and therefore this court has jurisdiction of the action. (2 Pars. on S. & Ad. [ed. 1869], 81, 82 and *n.* 1; *Hardin* v. *Gordon*, 2 Mason, 541; *Reed* v. *Canfield*, 1 Sumn. 195, 197; *The Steamship N. America*, 5 Ben. 486; *Brown* v. *Overton*, 1 Sprague, 462; *Tomlinson* v. *Hawett*, 2 Saw. 278; *City of Alexandria*, 17 Fed. Rep. 395; *The Hine* v. *Trevor*, 4 Wall. 555; *Moseley* v. *Scott*, 5 Am. L. Reg. [N. S.], 599; *Peterson* v. *Swan*, 18 J. & S., 46; *Belt* v. *Cummings*, 48 Am. Rep. 199.) A tort may be founded upon a breach of duty dependent upon or independent of contract.   (Addison on Torts [D. & B.'s ed.], 17, 18.)   The appellants being co-owners, and one of them also the master of the vessel, the presumption is that the relation of seaman and master and owners existed between them and the respondent, and therefore the burden of proof was on them to rebut this presumption.   (1 Pars. on S. & Ad. [ed. 1869], 106; *Green* v. *Briggs*, 6 Hare, 395; *Baker* v. *Corey*, 19 Pick. 496.)   An agreement that for sailing the vessel the master shall have half her earnings is only a mode of paying him for his services.   (*Dry* v. *Boswell*, 1 Camp. 329; *Dowson* v. *Leake*, 16 Eng. C. L. Rep. 432; *Baker* v. *Corey*, 19 Pick. 496; *The Blessing*, 3 L. R. P. D., 35; *Steele* v. *Lester*,

3 L. R. P. D., 121; *Oakland C. Man. Co.* v. *Jennings*, 13 Am. R. 209; *Kenzel* v. *Kirk*, 37 Barb. 113; 32 How. 269; *Vose* v. *Cockroft*, 45 Barb. 58, 59; *McCready* v. *Thorne*, 49 id. 438; 54 N. Y. 454, 461; *Stroker* v. *Elting*, 97 id. 102; *The Phebe*, 1 Ware, 266; *Lyman* v. *Redman*, 23 Me. 289.) The relation of seaman and master and owner always exists where the owners and master participate in the earnings of the vessel. (*Skolfield* v. *Potter*, 2 Ware, 394, 406.) Yates was the *alter ego* of the rest of the part owners as to the duty which they owed to the respondent. (*Flike* v. *B. & A. R. R. Co.*, 53 N.Y. 549; *Fuller* v. *Jewett*, 80 id. 46; *Peterson* v. *Swan*, *supra*; *Brown* v. *Overton*, *supra*; *Tomlinson* v. *Hawett*, 2 Saw. 278.) Whether or not the master of a vessel is, as to all matters within the scope of his authority, the *alter ego* of the owners, for the reason that he has the right to command the movements of the vessel, and to employ, discharge and direct all the persons on board engaged in her service is a question not involved in this case. (*C. M. & St. P. R. R. Co.* v. *Ross*, 112 U. S., 377; *Corcoran* v. *Holbrook*, 59 N. Y. 519; *Pantzer* v. *Tillie F. Iron M. Co.*, 99 id. 368; *Hussey* v. *Coger*, 39 Hun, 639.)

FINCH, J. The verdict of the jury requires us to adopt the plaintiff's version of the facts, since the judgment was in his favor and the negligence of the master thereby established. If that judgment was against him alone very little question would arise, but it involves another owner, not on board the vessel but remaining at home, and so situated in his relation to the facts as to make necessary their careful consideration.

The barkentine upon which plaintiff was injured, while employed as mate, was owned by defendants. She was sailed by defendant Yates as master, on shares, by virtue of an agreement with the other owners to that effect. The agreement was not in writing, and is detailed solely by the two owners, each of whom testified to its existence. The vessel started on a voyage to Sagua la Grande, in Cuba, and when some distance at sea the plaintiff received an injury in the performance

of his duty, which developed into an aneurism of the popliteal artery, causing him great pain, and largely incapacitating him for active service. The vessel was provided with a proper medicine chest, and no complaint is made that, before arriving at the port of destination, the master treated his mate otherwise than with kindness and care, and with such means as his limited knowledge and opportunity enabled him to use. But on reaching port and consulting a physician it was made apparent to the master that surgery and not medicine was needed to cure the injury. At this point of the case the contradictions become plentiful, but we must assume, in support of the verdict, that the doctor consulted disclosed the true nature of the disease; that he advised the removal of the injured man to the hospital, about fifteen miles distant, or at least to a suitable place on shore; that he pronounced it dangerous to carry the mate back to New York without an operation, if a delay exceeding twelve days was involved; that the plaintiff requested a removal to the hospital or to the shore with the provision usual in such cases and necessary to his support; but that the master refused these requests and kept him on board till the home voyage was begun and ended, and, more than twenty days after the doctor's warning, landed the mate in New York and placed him in a hospital where amputation became necessary because of the long delay and destructive progress of the disease. It is of little consequence to the liability of Yates whether he be regarded as master or owner, for in either character the negligence was his and drew with it a personal responsibility.

The maritime law is sensitive to the rights of seamen and sedulous for their protection. When sick or injured they are entitled to be cared for and cured at the expense of the ship, and not to be turned adrift in strange lands without adequate provision. They are exposed to hardship, confronted with dangers, and grow occasionally reckless by their very familiarity with peril. The master's authority is quite despotic and sometimes roughly exercised, and the conveniences of a ship out upon the ocean are necessarily narrow and limited. That

which on land would be contributory negligence the maritime law scarcely recognizes and readily excuses, (*The City of Alexandria*, 17 Fed. Rep. 390, 395), and in many ways throws its protection around the seaman. When he falls sick or suffers injury the owners owe to him the duty of rendering such care and medical aid as circumstances permit, and in the performance of that duty the master stands as the agent and representative of the owners and his negligence is theirs. (*Petersen v. Swan*, 50 N. Y. Supr. Ct. 46; *The City of Alexandria, supra; Reed v. Canfield*, 1 Sumner, 195; *Harden v. Gordon*, 2 Mason, 541, 543.) The last cited case considers the effect of the act of Congress requiring the ship to be supplied with a suitable medicine chest, and holds that such requirement does not subvert the general duty imposed upon the owners by the maritime law, but merely regulates a single detail of its exercise. This duty the owners who remain at home and do not sail upon the ship can only perform, beyond supplying the medicine chest, through the master, who becomes their agent for its performance. The mate, although an officer, is a seaman. (*Holt v. Cummings*, 102 Pa. 212; *Ocean Spray*, 4 Sawyer, 105; *Minna*, 11 Fed. Rep. 759.) While both he and the master are servants of the owner and so fellow servants, they are not such in respect to the owners' duty to the seamen which the master performs in their behalf and as their representative, and the contention in this case that the master's neglect was that of a fellow servant cannot prevail.

Where the duty of the owner to the seaman is performed, the cost of nursing and medical attendance falls upon the ship, (*North America*, 5 Ben., 486), and that has been ruled even where the patient had been removed to his own house. (*Holt v. Cummings, supra.*) But where that duty is not performed, and the seaman suffers injury from the neglect, the ship, in a proceeding *in rem.*, and the owners in a suit against them, are liable for the damages suffered. (*Couch v. Steel*, 77 Eng. Com. Law. Rep. 402; *Brown v. Overton*, 1 Sprague, 463; *Mosely v. Scott*, 14 Am. Law Reg. 599; *Tomlinson v. Hewett*, 2 Sawyer, 278; *Petersen v. Swan, supra.*) These principles

settle the liability of Metcalf, unless he is discharged by force of his arrangement with the master, to which attention must now be directed.

There is very much of authority for the doctrine that where there is a charter of the vessel which strips the owner of all authority, possession and control, the charterer becomes owner *pro hac vice,* and the general owner ceases to be liable for the contracts or torts of the master, except for the wages of seamen.    There seem to be limitations upon that doctrine and doubts about it, although the main drift of authority is in that direction.    (*Hallet* v. *Columbian Ins. Co.,* 8 Johns. 272; *Thorp* v. *Hammond,* 12 Wall. 408; *Thomas* v. *Osborn,* 19 How. [U. S.] 22; *Reynolds* v. *Toppan,* 15 Mass. 370.)    But I have arrived at the conclusion that this doctrine, even if broadly maintained, applies only to cases in which there has been an actual demise of the vessel, such as to take from the owner all possession, authority and control, and not to cases where there has been merely a contract about the vessel for the division of earnings and expenses.    There are cases which may justly be cited as not in accord with that conclusion, (*Taggard* v. *Loring,* 16 Mass. 336; *Cutler* v. *Winsor,* 6 Pick. 335), but the current of authority in this State runs in its favor, and I am strongly convinced that it is sound in principle and just in its application.    In *Hallet* v. *Columbian Insurance Company* (*supra*) there was an actual charter of the vessel, the owners receiving a stipulated price for its use. In *Thorp* v. *Hammond* (*supra*). the arrangement, although a letting on shares, is described by the court as, in effect, a chartering of the vessel and a surrender by the owner of all authority and control.    The case was one of collision and largely affected by the terms and language of the act of Congress of 1851.    In *Kenzel* v. *Kirk* (37 Barb. 113), where the vessel was let to the master on shares, he to provide supplies, it was ruled that there was not a "positive chartering," and the owners were liable for supplies to a vendor ignorant of the arrangement.    In *Macy* v. *Wheeler* (30 N. Y. 241) it was said

that the liability for supplies depends not on legal ownership but possession and control. In *Vose* v. *Cockroft* (45 Barb. 58, 60) there was a written agreement that the master should sail the vessel on shares in the customary way, he to man and provision her, pay one-half of port charges and expenses and of extra labor, and have "as wages," one-half of the gross freight. This was held not to be a chartering of the vessel, and great force was given to the stipulation describing the master's share as "wages." In *McReady* v. *Thorne* (49 Barb. 438) there was a letting on shares, the master to victual, man and sail the ship at his own expense, pay port charges out of earnings and divide the balance equally with the owners. It was ruled that the master was not owner *pro hac vice*, and that the general owners were liable for unpaid port charges. A comparatively recent case in the English courts discusses the liability of the owner for the negligence of the master where the relations between them were much like those in the case at bar. (*Steel* v. *Lester & Lilee*, 3 L. R., Com. Pl. Div. 121.) Lester was owner and Lilee was captain. It was agreed between them that Lilee should sail the ship wherever he chose, be at liberty to take or refuse any cargo, engage and pay the men and furnish all requisite supplies, and give Lester one-third of the net profits. While the vessel was unloading at its port of destination, under a charter-party made by the master, the wharf was damaged by the sloop through the negligence of Lilee, and Lester was sued for the damages. The court decided that the arrangement did not amount to a demise of the vessel, and was not such an absolute parting with it as would sever the control. These authorities indicate a distinction which I am content to recognize between an actual demise of the vessel which transfers its possession, and all authority and control over it, and a mere arrangement for the sailing of the ship, which does not amount to a demise, and, therefore, leaves some possession, authority and control in the owner, although narrowed and restricted by the terms of the agreement. Unless there is an actual demise of the vessel which destroys the relation of master and owner, and substitutes that of bailor and bailee, the rela-

tion must continue and the master remain servant and agent of the owner.

Now the arrangement between Yates and Metcalf was neither in form nor substance a demise of the vessel. The latter says that the captain sailed her on shares; that he, Metcalf, had nothing to do with the manning of the vessel or victualing of the crew, and nothing to do with hiring the seamen or paying the running expenses; that the freight paid expenses and the balance was divided up. The master testified, " I had an agreement with the owners to sail freight on what is known as shares, that is I have half of the gross stock of earnings of the vessel, and pay for the victualing and manning of the vessel, and pay the tonnage out of my part of the gross earnings; " and he added that the owners had nothing to do with hiring the seamen, victualing them or furnishing supplies. This seems to me but a mode of paying the master for his services. It was not said that he should dictate the voyages, decide as to cargo, fix rates of freight and absolutely control the vessel to the exclusion of Metcalf. Indeed it appears that she was consigned to Metcalf, and that he exercised some authority over her. His dividend from her earnings was increased by the very saving of expenses which the master effected at the risk and to the injury of the mate, and I am unable to resist the conclusion in spite of the very learned and interesting argument for the appellants, that the judgment was correctly given against both the owners.

The judgment should be affirmed.

All concur.

Judgment affirmed.