BERTRAM A. McDOWELL, Appellant, *v.* THE HOMER RAMSDELL
TRANSPORTATION COMPANY, Respondent.

*Damages for personal injuries — liability of one for the acts of another.*

What one does by another he does himself; the immediate employer of a servant,
through whose negligence an injury occurs, is personally responsible therefor.
In an action brought to recover damages for personal injuries where the act com-
plained of was not done by the defendant, nor by any one acting by his com-
mand or request, nor by one whom he had the right to command, and over
whose acts and conduct he had control, nor by one whose operations he could
direct or whose negligence he could restrain, and where the act was not done
for his benefit so that an implied obligation on his part to pay compensation
therefor would arise, nor done in the occupation of land by him or upon land to
which he had title, a recovery against him is improper.

APPEAL by the plaintiff, Bertram A. McDowell, from a judgment
of the Supreme Court in favor of the defendant, entered in the
office of the clerk of the county of Dutchess on the 20th day of
June, 1893, upon the dismissal of the complaint directed by the
court after a trial at the Dutchess Circuit before the court and
a jury, with notice of an intention to bring up for review on such
appeal the order granting a nonsuit.

*A. H. F. Sleger* and *Wood & Morschauser*, for the appellant.

*M. H. Hirschberg*, for the respondent.

DYKMAN, J.:

If the plaintiff prevails in this action it must be upon the success-
ful invocation of the principle of *respondeat superior*, because the
individual who perpetrated the cruel wrong upon him is not sued,
the claim of the plaintiff being that he was the servant of the
defendant, who was, therefore, responsible for his wrongful act. The
rule of law that what a man does by another he does himself is
so well established that it has passed into a legal maxim. And upon
that rule is built up another legal principle, equally well established
under the name of *respondeat superior*, which belongs to the rela-
tion of principal and agent, master and servant, superior and sub-
ordinate, and is co-extensive with those relations.

The rule itself is free from obscurity and easily understood, but its applicability to a given case is oftentimes very uncertain, arising from the difficulty of determining whose servant the person is who perpetrated the wrong which caused the injury.

The basis of the rule is the power of the superior to prevent the injury by controlling the subordinate, and where such power does not exist the rule has no application.

It will be of paramount importance, therefore, to ascertain whether the individual who injured the plaintiff was the servant of the defendant at the time of the commission of the act, and, therefore, a recitation of the facts will not be inappropriate.

On the 3d day of August, 1892, the defendant was the owner of the steamboat *James T. Brett,* which was in commission and supplied with the complement of officers and men employed by the defendant for the successful navigation of the vessel. On that day the boat was chartered to Mink and Burnett for an excursion from Highland in Ulster county to Coney Island and back. The charterers advertised the excursion in their own name, and assumed the control of the boat and crew, and received the proceeds of the adventure. The excursion was made without accident until the return of the boat to the dock at Fishkill Landing in the evening. When the boat was leaving the dock the plaintiff requested and received permission from Burnett to go on board the boat. At that time the gang plank had been hauled in, the rail put up and the paddle wheels started. The plaintiff jumped upon the guard of the boat outside the rail and was shoved off into the water by one of the crew. The boat was stopped and the plaintiff was rescued, but he was placed in imminent peril of his life.

At the close of the trial at the Circuit the plaintiff was nonsuited, and he has appealed from the judgment.

In the examination of the case we will assume that the plaintiff had the right to go upon the boat as he undertook to do and that his expulsion was wrongful. While it might be a presumption of law arising from the ownership of the boat that it was in use for the benefit of its owners, that presumption is overcome in this case by the proof that the ownership was separate from the possession, which was not in subordination to the title but to the charter party. An excursion may be concluded without danger or harm to any one. If

it could not then the defendant might be liable because it chartered the boat for that very service, and could not escape liability by interposing the contract to do the thing that caused the injury.

It is to be observed, also, that the injury to the plaintiff did not result from any defect in the boat or its machinery or appliances, nor from any fault in the navigation or management of the boat, but from the wrongful conduct of one of the crew.

The owner surrendered all control of the boat and all her employees, and had no immediate interest in her earnings during the existence of the charter party. There was, therefore, an actual demise of the vessel which stripped the owner not only of the possession of the boat, but also of all authority and control over her. When the charterers hired the boat and crew that was an adoption and selection of the men which constituted them their servants, and the men were under their full control. They could remove any of the deck hands for disobedience or misconduct, and that power brought them within the rule laid down in *Quarman* v. *Burnett*, hereafter noticed. These facts appear to be sufficient to bring the case within the decision of the Court of Appeals in the case of *Scarff* v. *Metcalf* (107 N. Y. 211). They create the relation of master and servant between the crew and charterers. As there cannot be two superiors at the same time, the defendant is relieved from the position if our conclusion is correct.

In the case of *Blake* v. *Ferris* (5 N. Y. 48) the doctrine of *respondeat superior* received the fullest exposition, and the teaching of the case is adverse to the plaintiff here. It was there decided that the immediate employer of the servant, through whose negligence an injury occurred, was personally responsible therefor, and that rule is in accordance with reason and justice when applied to this case. The defendant surrendered the boat and crew to Mink and Burnett, and during the continuance of the charter party they exercised absolute authority over both; so far as the crew was concerned, they were subject to the orders of Mink and Burnett. It was, therefore, their duty to prevent the molestation of the passengers by the crew, and there was none other who could. The defendant had no superintendent or other person on board to exercise any supervision or care, and as it was destitute of power it should be held free from responsibility. The appellant has

referred to an English case where the lessee of a ferry hired from the defendants a boat and crew for one day to carry passengers across. He received the fares and paid the defendants for the boat. They sent the crew and paid them. The plaintiff, who was a passenger, went on board for the purpose of crossing, and was injured while there by the breaking of some of the tackle by the negligence of the crew, and the court permitted a recovery. It appeared in that case, however, that the crew was controlled by the defendants, and beside that, the cause of the injury was the breaking of the tackle belonging to the boat. The case is not sufficiently analagous to this to render it authoritative. There are several English cases much like this. In the case of *Milligan* v. *Wedge* (12 Ad. & El. 737) the defendant, who was a butcher, employed a drover to drive an ox to his slaughter house; the drover employed a boy to drive the ox, and he permitted it to run into the show room of the plaintiff, where he caused damage. The defendant had the verdict, which was sustained on appeal.

In *Quarman* v. *Burnett* (6 M. & W. 497) the defendants owned a carriage and hired a pair of horses and driver to draw it for a short time, during which the horse and chaise of the plaintiff was injured by the carelessness of the driver, and a suit was brought against the defendants.

The plaintiff obtained the verdict, and the judge reserved the right to move for a nonsuit, and upon that motion the decision was that the defendants were not liable, and a verdict was entered in their favor. The opinion in that case contains the following language: "That person is undoubtedly liable who stood in the relation of master to the wrongdoer, he who had selected him as his servant from the knowledge of or belief in his skill and care, and who could remove him for misconduct, and whose orders he was bound to receive and obey. * * * But the liability by virtue of the principle of relation of master and servant must cease where the relation itself ceases to exist, and no other person than the master of such servant can be liable on the simple ground that the servant is the servant of another, and his act the act of another."

In the cases of *Robinson* v. *Corbett* (9 M. & W. 709); *Allen* v. *Haywood* (7 Ad. & El. 960), the facts were similar to the others, and the decisions were to the same effect. In the case of *Langley* v.

*Pointer* (6 M. & W. 697), which was similar, the judges were divided upon the question.

The only English case which supports the contention of the plaintiff is *Bush* v. *Steinman* (1 Bos. & Pul. 404), but that case has been overruled and repudiated both in England and in this country and is no longer entitled to any respect. (*Blake* v. *Ferris*, 5 N. Y. 62; *Hillyard* v. *Richardson*, 3 Gray, 349.) This last case is very instructive, and the facts were these:

The defendant, who was the owner of a building by the roadside, entered into a written contract with one Shaw to alter the building into a dwelling house, and to furnish all materials necessary therefor. Shaw procured some boards and sent them by a teamster, who acted under his direction, to the place for use there, and the teamster piled them up by the side of the road. In a short time thereafter the plaintiff was riding along the road, when his horse became frightened by the boards and bolted from his course, and the plaintiff was thrown from his wagon and injured. The plaintiff obtained a verdict which was set aside in an elaborate opinion which held the defendant free from liability, and concluded with these words:

" Viewing this as a question not of authority, but to be determined by the application to these facts of settled principles of law, upon what principle can the defendant be held responsible for this injury? He did not himself do the act which caused the injury to the plaintiff; it was not done by one acting by his command or request, it was not done by one whom he had the right to command, over whose conduct he had the efficient control, whose operations he might direct, whose negligence he might restrain.

" It was not an act done for the benefit of the defendant and from the doing of which an implied obligation for compensation would arise. It was not an act done in the occupation of land by the defendant or upon land to which, upon the facts, he had any title."

These words apply with equal force to this case and are decisive of this appeal.

The judgment should be affirmed, with costs.

PRATT, J., concurred; BROWN, P. J., not sitting.