## THE A. HEATON.

*(Circuit Court, D. Massachusetts. September 9, 1890.)*

1. SHIPPING—INJURIES TO SEAMEN—LIABILITY OF OWNER OF VESSEL.
    A petition to recover for injuries sustained by a seaman, by reason of the alleged negligence of the master and owners of the vessel in not providing a suitable gasket for the foresail, cannot be sustained on the ground of actual personal negligence of the owners, where it appears that there was plenty of spare rope on board, which it was the duty of the master to use in keeping the rigging in repair, and there is nothing to show that the owners sent the vessel to sea in an unseaworthy condition, or were themselves negligent, either in the selection of a master or otherwise.

2. SAME—EVIDENCE.
    The mate testified positively that, before the accident, he examined the gaskets, and reported to the master that they were in poor condition, especially the one in question, and that the latter replied "that it lasted the last voyage, and he thought it would do this, and that he did not intend to spend much on it, but run it as cheap as he could, because on his return * * * he would be off, and the ship sold." *Held*, that testimony of the master that he did not recollect being notified of the condition of the gasket, raised no doubt of the truth of the positive testimony of the mate, especially as the master professed equal forgetfulness of other circumstances attending the accident.

3. SAME—MEASURE OF DAMAGES.
　A seaman, permanently injured in the performance of his duty on shipboard, in consequence of the negligence of the master in not keeping a rope in proper condition and repair, can maintain a libel against the ship to recover damages for the injury, beyond his wages to the end of the voyage and the expenses of his cure, so far as the injury is susceptible of cure.

4. SAME—EXCESSIVE DAMAGES.
　When it appears that petitioner's left hip and arm were fractured, and that he was permanently disabled from pursuing any calling requiring bodily exertion, $1,500 damages are not excessive.

In Admiralty. Appeal from district court.

*T. J. Morrison,* for petitioner.

*George M. Reed* and *M. J. McNeirney,* for claimants.

Before GRAY, Justice, and COLT, J.

GRAY, Justice. The schooner A. Heaton having been sold by order of the district court for $2,150 upon a libel for seamen's wages, and about $1,500 of the proceeds of the sale remaining in the registry of the court, after payment of such wages and costs, Julius Hanson filed a petition, in the nature of a libel *in rem,* to recover damages for injuries sustained, while serving as a seaman on board the schooner on her last voyage, by reason of the negligence of her master and owners in not providing a suitable gasket for the foresail. The district court held that the petitioner was entitled only to his expenses in the hospital, which had been paid by the owners, and to his wages to the end of the voyage, with interest from the return of the vessel, and entered a decree accordingly; and he appealed to this court.

The petitioner shipped as an able seaman, at Gloucester, in this district, for a voyage to the British provinces, and thence to the Mediterranean, and back to a port of discharge in the United States, on the A. Heaton, a three-masted schooner, carrying a square foresail, the method of furling which was by sliding it along the yard, and making it fast to the mast with brails, and winding gaskets around it to avoid bagging between the brails. On the third day out from Gloucester, the petitioner was ordered aloft to take part in furling the foresail, and in performing that duty was obliged to let himself down from the yard, holding the sail between his knees, and the gasket in his hands; and, while he was so compressing the sail and winding the upper gasket around it, the gasket broke, and he fell to the deck, whereby his left hip and left arm were fractured, and he was permanently disabled from pursuing any calling requiring bodily exertion. The accident happened by reason · of the defective condition of the gasket, which by long use had become rotten and weak, and the petitioner had no notice or knowledge of its condition until it gave way in his hands. There being no evidence of any negligence on his part, we have no occasion to consider how far such negligence, if proved, might affect his right to recover. The gaskets are a part of the rigging, which requires frequent renewal at sea. There was plenty of spare rope on board, which it was the duty of the master to use in keeping the rigging in repair; and there is no evidence that the owners sent the vessel to sea in an unseaworthy condition, or were themselves negligent, either in the

selection of a master or otherwise. This petition cannot, therefore, be maintained on the ground of actual personal negligence of the owners.

But it is equally clear to our minds that the accident was caused by the master's gross, not to say reckless, neglect of the duty which he owed to the crew under his command and care. The mate distinctly and positively testified that before the accident, having been up in the rigging and examined the gaskets, he reported to the master that the gaskets, and especially the upper one, were in poor condition, and in want of repair; and that the master replied "that it lasted the last voyage and he thought it would do this, and that he did not intend to spend much on it, but run it as cheap as he could, because on his return to the United States he would be off, and the ship sold." The words attributed to the master by the mate are in accord with the subsequent action of owners in allowing the vessel to be sold to pay the wages of the crew. Although the master, on his direct examination by the counsel for the owners, testified that he did not recollect any such conversation, yet on cross-examination he admitted that it might be that the mate had called his attention to the defective condition of the gasket, and it had slipped his mind. And the master professed equal forgetfulness of other circumstances attending the accident, and especially of the fact, proved by the concurring testimony of the mate, the petitioner, and three of the four other seamen on board, that the petitioner, when he fell, held up the broken gasket, and cried out, "Captain, this is your fault." Taking all this into consideration, the master's want of recollection, whether real or assumed, the previous notice to him of the defective condition of the gasket, raises no doubt of the truth of the distinct and positive testimony of the mate upon that point.

The case is thus resolved into the question of law, whether a seaman, permanently injured in the performance of his duty on ship-board, in consequence of the negligence of the master in not keeping a rope in proper condition and repair, can maintain a libel in admiralty against the ship to recover damages for the injury, beyond his wages to the end of the voyage and the expenses of his cure, so far as the injury is susceptible of cure. This question, both as to the jurisdiction and as to the merits, appears to us to be substantially determined by the decisions of the supreme court. In England, indeed, it appears to be unsettled whether a libel *in rem* can be maintained in admiralty for a personal injury. But on principle, as observed by a recent English writer, it would seem difficult to deny the justice of the view that personal injuries inflicted by a ship might confer a maritime lien, or to formulate a satisfactory reason why damages occasioned to a man's property should give rise to rights of a higher nature, or be the subject of a more effective remedy, than an injury occasioned under the same circumstances to his person. 4 Law Quar. Rev. 388. In this country, it has been established by a series of judgments of the supreme court of the United States, that a libel in admiralty may be maintained against the ship for any personal injury, for which the owners are liable under the general law and independently of any local statute; accordingly passengers have often maintained libels, as well

against the ship carrying them as against other ships, for personal injuries caused by negligence for which the owners of the ship libelled were responsible. *The New World*, 16 How. 469; *The Washington*, 9 Wall. 513; *The Juniata*, 93 U. S. 337; *The City of Panama*, 101 U. S. 453, 462. The sixteenth rule in admiralty, which directs that "in all suits for an assault or beating upon the high seas, or elsewhere within the admiralty and maritime jurisdiction, the suit shall be *in personam* only," does not affect libels for negligence. It was argued in behalf of the owners that they were not responsible to the seaman for the negligence of the master, because the two were fellow-servants; and a Scotch case was cited, where in an action at law it was so held. *Leddy* v. *Gibson*, 11 Ct. Sess. Cas. (3d Ser.) 304. But we are unable to reconcile that decision with the recent judgment of the majority of the supreme court in *Railway Co.* v. *Ross*, 112 U. S. 377, 5 Sup. Ct. Rep. 184, which conclusively binds this court. The point there decided, as stated by Mr. Justice FIELD in delivering judgment, was that the conductor of a railway train, who commands its movements, directs when it shall start, at what stations it shall stop, and at what speed it shall run, and has the general management of it, and control over the persons employed upon it, is in no proper sense a fellow-servant with the firemen, the brakemen, the porters, and the engineer upon the train; but represents the company, and therefore, for injuries resulting from his negligent acts, the company is responsible. 112 U. S. 390, 394, 5 Sup. Ct. Rep. 190, 192. The reasoning, upon which it was there held that the engineer might maintain an action against the owners of a railroad train for the negligence of the conductor, applies with greater force to a suit by a seaman against the owners of a vessel for negligence of the master, while she is at sea, beyond the reach of the owners, and the seaman is subject to the absolute control of the master, and cannot, if he would, leave the vessel or throw up his engagement. No reason can be assigned why the owners of a vessel should be held less liable to a seaman for the negligence of the master in a court of admiralty than in a court of common law. Courts of admiralty have always considered seamen as peculiarly entitled to their protection. Seamen may recover their wages by libel *in personam* against either the owners or the master, or by libel *in rem* against the ship. *Sheppard* v. *Taylor*, 5 Pet. 675, 711; *Bronde* v. *Haven*, Gilp. 592; *Temple* v. *Turner*, 123 Mass. 125, 128; Rule 13 in Admiralty. Their lien on the ship or its proceeds takes precedence of all other claims, except, perhaps, claims for salvage, or for damages by collision owing to the fault of their ship. Ben. Adm. § 69, and cases cited; *Norwich Co.* v. *Wright*, 13 Wall. 104, 122. A seaman, taken sick or injured or disabled in the service of the ship, has the right to receive his wages to the end of the voyage, and to be cured at the ship's expense. That right, indeed, grounded solely upon the benefit which the ship derives from his service, and having no regard to the question whether his injury has been caused by the fault of others or by mere accident, does not extend to compensation or allowance for the effects of the injury; but it is in the nature of an additional privilege, and not of a substitute for or a restriction of other rights and reme-

dies. *Harden* v. *Gordon*, 2 Mason, 541; *The George*, 1 Sum. 151; *Reed* v. *Canfield*, Id. 195, 199, 202. It does not, therefore, displace or affect the right of the seaman to recover against the master or owners for injuries by their unlawful or negligent acts. In *Sherwood* v. *Hall*, 3 Sum. 127, Mr. Justice STORY, sitting in admiralty, held that the act of the master in shipping a minor as a seaman, knowing it to be against the will of his father, was a tort for which the owners of the ship were responsible in damages to the father, although positive and direct knowledge of the facts was not brought home to them; and said:

"Constructive notice is brought home to them by the knowledge of their agent, the master. * * * Upon the well-established principles of the maritime law, in cases of this sort, the owners are responsible for the torts of the master in acts relative to the service of the ship, and within the scope of his employment in the ship. * * * In cases of collision, and injuries from negligence and illegal captures, and other torts from the fault of the master, the owners are, by the maritime law, made responsible for his acts and omissions of duty." Id. 131, 132.

In *Leathers* v. *Blessing*, 105 U. S. 626, 628, a merchant, who had gone on board a vessel expecting to find goods consigned to him, and had been there injured by the fall of a bale of cotton which, as the master knew, had been insecurely stowed, maintained a libel against the owners as well as the master; and it was assumed that the libelant's case would have been clear if he had been an officer, seaman, passenger, or freighter. In the high court of admiralty of England, Dr. LUSHINGTON, in a collision cause, while awarding damages to the owners of the vessel not in fault, denied them costs, because her master had not ordered out a boat to save the life of a seaman who had fallen overboard from the guilty vessel, and was drowned; and said:

"I must hold here, and I ever shall hold, that the owners of a vessel are responsible for the whole conduct of the master whilst on board his vessel, and in command of that vessel. I do not mean to say that they can be responsible, criminally speaking, for any act he may have committed of a criminal nature, for, of course, in that case the responsibility and the punishment can attach only to the wrong-doer; but, civilly speaking, the owners are responsible for any deviation from that line of conduct which it behooves a master to perform, not simply in the navigation of the vessel, and in the care of his own seamen, but in the care of those who may be thrown on board his ship by an accident of this description, and for the performance of any office of humanity." *The St. Lawrence*, 7 Notes Cas. Adm. & Ecc. 556, 559, 14 Jur. 534.

For these reasons, and upon these authorities, we are of opinion that the apppeal must be sustained.

This conclusion is in accordance with the general current of opinion in other circuits. *The Ben Flint*, 1 Biss. 562, 568; *The Sea Gull*, Chase, 145; *Brown* v. *The Bradish Johnson*, 1 Woods, 301; *The Tulchen*, 2 Fed. Rep. 600; *The Clatsop Chief*, 7 Sawy. 274, 8 Fed. Rep. 163; *The Noddleburn*, 12 Sawy. 129, 28 Fed. Rep. 855; *Olsen* v. *Flavel*, 13 Sawy. 232, 34 Fed. Rep. 477; *The Edith Godden*, 23 Fed. Rep. 43; *The Guillermo*, 26 Fed. Rep. 921. The decisions in *The Sea Gull* and *The Clatsop Chief* were disapproved and overruled by the supreme court in *The Harrisburg*, 119 U. S. 199, 7 Sup. Ct. Rep. 140, only because they awarded damages

for the death of the person injured. In those cases, in England or America, cited for the claimants, which most resemble the case at bar, the negligence which caused the injury was not shown to be that of the master. But it was either, as in *The Bernina*, 12 Prob. Div. 58, and L. R. 13 App. Cas. 1, and in *The Queen*, 40 Fed. Rep. 694, left in doubt by whose individual fault the accident happened; or else the negligence proved was, as in *Halverson* v. *Nisen*, 3 Sawy. 562, and in *The Egyptian Monarch*, 36 Fed. Rep. 773, of a mate, or, as in *The City of Alexandria*, 17 Fed. Rep. 390, of a steward, neither of whom was *dominus navis*, but each was employed under the master in a common service with the libelant, and therefore rightly held to be a fellow-servant. *Steam-Ship Co.* v. *Merchant*, 133 U. S. 375, 10 Sup. Ct. Rep. 397; *Benson* v. *Goodwin*, 147 Mass. 237, 17 N. E. Rep. 517; *Searle* v. *Lindsay*, 11 C. B. (N. S.) 429.

Considering the extent of the petitioner's injuries, $1,500 is not too large a sum to be awarded to him as damages. Decree of the district court reversed, and the sum remaining in the registry ordered to be paid to the petitioner in satisfaction of his damages and costs.