[No. 4665.    Decided September 12, 1903.]

SEWALL SANDERS, *Appellant*, v. STIMSON MILL COMPANY, *Respondent*.

MASTER AND SERVANT — INJURY OF SERVANT — NEGLIGENCE — SUF-
  FICIENCY OF EVIDENCE.

In an action for damages for injuries received from the accidental discharge of a gun which defendant was alleged to have

permitted a party of hunters to bring aboard a tugboat as passengers, the dismissal of the action was not error, when there was no testimony showing that the gun belonged to or was brought upon the boat by any of the hunters, or to whom it in fact belonged, or in what manner it had been discharged.

SAME — INJURY TO SEAMAN — LIABILITY OF SHIP FOR EXPENSE OF CURE.

A seaman who receives an injury while in the service of the ship is, under maritime law, entitled to medical care, medicine, and nursing necessary in effecting a cure, at the expense of the ship, and in an action against the owner therefor, he is entitled to recover the amount expended, whether or not the owner's negligence be proven, and regardless of whether he was nursed aboard ship or at his own home.

Appeal from Superior Court, King County.—Hon. GEORGE E. MORRIS, Judge. Reversed.

*Scott Calhoun, John E. Humphries* and *Harrison Bostwick,* for appellant:

While the appellant would have the right to libel the vessel, or to bring an admiralty suit *in personam,* yet the judiciary act reserves to him the right to bring an action in the state court. The national constitution and laws have not vested exclusive jurisdiction of actions like the case at bar in federal courts, therefore it may be maintained in the state court. *Claflin v. Houseman,* 93 U. S. 130 (23 L. ed. 833); *Calvin v. Huntley,* 59 N. E. 435; *Keating v. Pacific Steam Whaling Co.,* 21 Wash. 415; *Leon v. Galceran,* 11 Wall. 185 (20 L. ed. 74).

The right of seamen to be cured of sickness or any injury received in the ship's service, at the expense of the ship, is a rule regarded in the maritime law as forming part of the contract. *Temple v. Turner,* 123 Mass. 125; *Peterson v. The Chandos,* 4 Fed. 645; *The City of Alexandria,* 17 Fed. 396.

The respondent violated the United States navigation

laws in taking guns, ammunition and hunting parties up-
on the boat, and was therefore guilty of negligence *per se.*
The violation of a statute which contributes to plaintiff's
injuries is *prima facie* evidence of negligence.  *Maxwell
v. Durkin,* 86 Ill. App. 257; *Toledo, P. & W. Ry. Co. v.
Deacon,* 63 Ill. 91; *McRickard v. Flint,* 114 N. Y. 226;
*Knupfle v. Knickerbocker Ice Co.,* 84 N. Y. 488; *Siemers
v. Eisen,* 54 Cal. 418; *Platte & Denver C. & M. Co. v.
Dowell,* 17 Colo. 376; *Western & Atlantic R. R. Co. v.
Young,* 81 Ga. 397; *Pennsylvania Co. v. Horton,* 132 Ind.
189; *Correll v. Burlington, C. R. & M. R. R. Co.,* 38 Iowa,
120; *Dahlstrom v. St. Louis, I. M. & S. R. R. Co.,* 108
Mo. 525; *Queen v. Dayton Coal & I. Co.,* 95 Tenn. 458
(30 L. R. A. 82); *Smith v. Milwaukee Builders' &
Traders' Exchange,* 64 N. W. 1041 (30 L. R. A. 504).
"The general rule is, that whether or not a given result
is a natural and proximate consequence of a particular act
is a question of fact for the jury.    This applies without
exception to cases where the particular act constitutes a
violation of a statute."  *Hoppe v. Chicago, M. & St. P.
Ry. Co.,* 61 Wis. 357; *Hayes v. Michigan Cent. R. Co.,*
111 U. S. 241 (28 L. ed. 410); *Selleck v. Lake Shore &
M. S. Ry. Co.,* 93 Mich. 375; *Binford v. Johnston,* 42
Am. Rep. 508; *Eskildsen v. Seattle,* 29 Wash. 583 (70
Pac. 64).

As to rules governing master and seaman see *Thompson
v. Hermann,* 47 Wis. 602; *Anderson v. New York, etc.,
Steamhsip Co.,* 39 N. Y. Supp. 425; *Eldridge v. Atlas
Steamship Co.,* 134 N. Y. 187.

*Root, Palmer & Brown,* for respondent:

The taking of these sportsmen and guns upon the tug-
boat was not an illegal act.  Gould & Tucker's Notes on

Revised Statutes, Vol. 2, p. 545; *United States v. Guess,* 48 Fed. 587; *The Morning Star,* 17 Fed. Cas. No. 9817; *The Joshua Leviness,* 13 Fed. Cas. No. 7549; *Eastern Transportation Line v. Cooper,* 99 U. S. 78 (25 L. ed. 382). The violation of a statute does not constitute negligence as to one for whose protection the provision was not intended.

The opinion of the court was delivered by

DUNBAR, J.—This is an action brought by the appel-lant against the respondent to recover damages for injuries sustained by appellant while engineer upon the steam tug "Tillicum," owned by respondent, the allegations of the complaint being that respondent unlawfully permitted a party of hunters to go upon the boat; that while there they negligently discharged guns and firearms upon the boat, by which appellant was shot in the legs by the discharge of a shot from a shotgun brought on the boat by one of the hunters, to his damage as alleged. The answer put in issue the material allegations of the complaint. At the conclusion of plaintiff's testimony the case was taken from the jury, and judgment rendered in favor of respondent and against appellant for costs, and dismissing the case.

There are two assignments of error: (1) The action of the court in sustaining the motion of respondent for judgment against the appellant, dismissing the case, and rendering judgment against appellant for costs; (2) in sustaining the motion of respondent to the sufficiency of the testimony of appellant. The testimony was to the effect that a party of three men, with shotguns, came on board the tug at Seattle, and that after the tug had proceeded a short distance the men commenced to shoot. The appellant, who was the engineer of the tug, went upon

the deck, and, after he had been there about a minute, a gun, which he presumed was standing against the side of the boat, fell, and in falling was discharged. The shot with which the gun was loaded entered the legs of appellant, causing the damage of which he complains.

It is unnecessary to discuss the questions which seem to have occupied the lower court, viz., as to whether or not it was unlawful for the tug to carry passengers, by reason of its not having been licensed so to do, and whether the men who were traveling upon this boat were passengers, within the meaning of the license laws regulating the carriage of passengers on boats. For there is absolutely no testimony in the case showing that the gun which produced the injury belonged to, or was brought upon the boat by, one of the alleged passengers, or in what manner it was discharged, or whose gun it was. The following excerpt from the cross-examination of the appellant shows substantially all the evidence upon this subject:

"Q. What were the others shooting at at that time? A. Nothing. Q. Did they do any shooting while the boat was standing there? A. No, sir. Q. Where was the gun that was discharged and shot you? A. It was setting forward somewhere, I understand. I didn't see the gun at all. Q. Let me refresh your memory. Didn't you see the gun just as it was falling. A. No, sir. Q. Didn't you have some talk with Mr. Charles afterwards and say that you saw it just as it was falling? A. No, sir. I didn't see the gun as it was falling at all. Q. And you didn't know anything about it until it was discharged? A. I didn't know anything about it until it was discharged. Q. Whose gun was it that was discharged? A. No, sir. I don't know. Q. You don't know whether it belonged to Mr. Charles or not? A. No, sir. Q. You don't know whether it belonged to the Stimson Mill Company or not? A. No, sir. Q. You don't

know anything about it? A. I don't know who it belonged to. Q. Do you know who put that gun into the bow of the boat? A. I do not."

So that it will be seen there was no proof that the admission of these hunters to the tug was the cause, proximate or remote, of the accident which occurred. We think the question of damages, so far as the result of the injury was concerned, was properly withdrawn from the jury.

But it is stoutly maintained by the appellant that, under the maritime law, a seaman who receives an injury while in the service of the ship is entitled to medical care, nursing, and attendance, and to a cure, so far as is possible, at the expense of the ship, regardless of whether or not the condition of the seaman is brought about by the negligence of the owners of the ship, or is the result of disease or accident. This contention is, we think, sustained by the authorities, but it does not go beyond expenses incurred in getting well. The appellant avers that by reason of said injuries he has incurred heavy expenses in employing a physician and surgeon to attend said injuries, and for medicine, amounting in all to the sum of $250 over and above the $10,000 damages claimed for the injury. This amount, if proven, we think the appellant is entitled to. It is true that many of the cases cited by the appellant are where the medical attendance was on shipboard, but it has been frequently decided that it makes no difference whether the medical attendance was on board the ship, or whether the party requiring the attendance had been removed to some other place. In *Whitney v. Olsen,* 108 Fed. 292, it is said:

"Under the maritime law it is well settled that a seaman who receives an injury while in the service of the ship is entitled to medical care, nursing, and attendance,

and to a cure, so far as cure is possible, at the expense of the ship." .

And it is well settled that the action may be brought either in the federal or state courts.

It was decided in *The A. Heaton,* 43 Fed. 592, that the right was grounded upon the benefit which the ship derived from the service of the sailor, having no regard to the question of whether his injury had been caused by the fault of others or by mere accident; that it did not extend to compensation or allowance for the effects of the injury, but was in the nature of an additional privilege, and not of a substitute for, or a restriction of, other rights and remedies; and that it did not, therefore, displace or affect the right of the seaman to recover against his master or owners for injuries by their unlawful or negligent acts—citing many cases to sustain the announcement. See, also, *Leon v. Galceran,* 11 Wall. 185; *Whitney v. Olsen, supra; The Iroquois,* 113 Fed. 965; *Scarff v. Metcalf,* 107 N. Y. 211 (13 N. E. 796, 1 Am. St. Rep. 807); *Holt v. Cummings,* 102 Pa. St. 212 (48 Am. Rep. 199).

The last case cited is exactly in point. It was decided there that the engineer of a tug boat employed in the Delaware river was engaged in a maritime service, and was entitled to the rights and benefits conferred on seamen by the maritime law; that one of such benefits was the right to receive medical attendance and medicine at the cost of the vessel when sick or injured during his service; and that such right was not taken away or limited by the United States statutes (Rev. St. U. S., §§ 4585, 4803), providing for the collection from vessels of forty cents per month for each seaman as a fund for the relief of sick and disabled seamen, and appropriated

for the expenses of the marine hospital service; that said acts afford an auxiliary resource for sick or disabled seamen. It is true that in this case the action was brought by the physician who waited upon the engineer, but the reasoning and decision of the court will apply equally to an action brought by the engineer himself. This, also, was a case where the services were performed at the home of the engineer.

It is not necessary to discuss the question whether the right to these services could be lost to the seaman by reason of contributory negligence, for there is no indication of contributory negligence in this case. While it is true that the engineer would not probably have received the damages which he sustained if he had remained in the engine room, yet it was his right, according to the testimony, to go upon the deck of the tug, where he was when he received the injury.

The judgment will be reversed, and the appellant allowed to prove the amount of expenses incurred in employing a physician and surgeon, and for medicine and attentions necessary to his proper treatment.

FULLERTON, C. J., and ANDERS, HADLEY and MOUNT, JJ., concur.