### PHILLIPS v. UNITED STATES et al.

(District Court, D. Maryland. February 21, 1923.)

Seamen ⬉29(1)—Owners of vessel not liable for injuries to seaman caused by gross negligence of master where due care was used in his selection.

Where libelant, a young and inexperienced school boy, was shipped as an able seaman, though he had never before been to sea, and, by reason of the bad judgment of the captain and the negligence of the boatswain, an inexperienced and incompetent man, shifting dunnage in a heavy sea, the libelant working in the hold was injured by a falling beam so that his leg was amputated considerably above the knee, *held* that neither the inexperience of the libelant nor the insufficiency of the equipment contributed to libelant's injury which was the result of gross error in judgment on the part of the master, so that libelant could not recover where the operators of the vessel showed that the master had the usual certificates and that he had good recommendation and that they exercised due care in choosing him, and libelant was restricted to an award for maintenance and cure.

Libel for personal injuries to Vernon L. Phillips, Jr., by Vernon L. Phillips, his next friend, against the United States of America, the

United States Shipping Board Emergency Fleet Corporation, and another. Decree for compensation, for maintenance, and medical cure only.

Daniel O. Hastings, of Wilmington, Del., and John H. Skeen, of Baltimore, Md., for libelant.

George Forbes and Amos W. W. Woodcock, U. S. Atty., both of Baltimore, Md., for respondents.

ROSE, Circuit Judge. This is a distressing case. The libelant, a well-grown school boy of Smyrna, Del., together with several of his companions, came to Baltimore in the spring of 1921, at a time when, in consequence of the marine workers strike then pending, it was difficult to man ships. Perhaps for this reason they were permitted to sign articles on the steamship West Cape as able seamen, although in point of fact the libelant and most of his companions had never been to sea before. The ship went to England, and on its return voyage, when within about four days' sail of the Capes of the Chesapeake, the libelant's foot was crushed under circumstances to be presently mentioned. Every effort possible was made for his relief. The wireless was used, and the assistance of a medical man of an English ship was obtained, and he was sent to the Marine Hospital at Norfolk. Unfortunately, amputation proved to be necessary, and for some reason the bone became infected, and there were repeated reamputations, the last in a hospital in Philadelphia to which the libelant was removed by his father. Apparently the wound is now permanently healed, but he has undergone much suffering and will go through life with a leg amputated considerably above the knee.

The accident appears to have been the result, proximate or otherwise, as one chooses to consider it, of bad judgment on the part of the captain, in consequence of which it became necessary while the ship was under way, and when a considerable sea was running, to take some dunnage out of the hold. Only a part of the hatch through which this was attempted was removed. Dangerous as this was, an accident was made still more probable because the boatswain, instead of having the dunnage placed directly under the opening of the hatch before having it made fast to the line which would raise it, carried that line to the dunnage which was either under the deck or the covered portion of the hatch and, there hooking it on, directed that the winch be started into motion. When lifting began, there happened what might reasonably have been expected. The dunnage or whip caught under the strong back supporting the portion of the hatch which had not been removed and, jerking it out of its socket, allowed it to fall into the hold. The libelant was not engaged in getting out the dunnage, but he was at work in the hold at some distance from the hatch helping to clean the bilges. As the beam chanced to fall, he had practically no opportunity to escape and he suffered in consequence.

The master of the ship was at the time at odds with his first officer. The man who filled the position of boatswain was inexperienced, having, however, been necessarily substituted for another apparently competent man who had become ill. The libelant charges negligence

on the owners of the ship in that the cleat or socket supporting the strong back was not of proper design or sufficient strength, that the officers of the steamship were incompetent, and the respondents owed a special duty to the libelant because of his youth and inexperience.

The evidence establishes beyond question that there was nothing whatever the matter with the construction or design of the cleat or socket. The accident was not due in any wise to insufficiency in it, but altogether to the gross negligence in the way in which the dunnage was taken out of the hold. Nor did the youth and inexperience of the libelant in any way contribute to his injury. The most experienced seaman in the world, had he been in the libelant's position, would doubtless have incurred the same fate.

A great deal more may be said as to the incompetency of the officers of the ship. The master was on deck at the time and certainly knew the hatch covers had not been completely removed before the hoisting operation began, and that there was any occasion at all while still at sea to undertake the work of getting out the dunnage was due to what appears to have been a gross error of judgment on his part. Nevertheless, the respondents proved that he not only had the usual certificates, but that he had good recommendations and that due care was exercised in choosing him. For some reason he managed things very badly. A part of the trouble unquestionably was attributable to the bad relations between himself and his first officer, for which the master rather than the mate appears to have been to blame. On the whole, however, the records do not show such lack of due and reasonable care in selecting competent officers as is necessary in order to charge the respondents on that score. In this case, one cannot help regretting that under the authorities it is not possible to hold somebody for the needless and irreparable injury done this youth.

As the decisions stand, however, all that may be awarded him is the cost of his maintenance and cure, which upon the testimony the parties agree amounts to $500.