[No. 20749.   Department Two.   November 3, 1927.]

# CARL G. PETERSON, *Respondent*, v. PACIFIC STEAMSHIP COMPANY, *Appellant*.[1]

[1] MASTER AND SERVANT (20-2, 46)—ELECTION OF REMEDIES (1)—
CAUSES SUBJECT TO ELECTION—FEDERAL LIABILITY ACT AND OTHER
STATUTES—ACTIONS BY SEAMEN—NEGLIGENCE OF OFFICER—LIABIL-
ITY.  Under § 33 of the Jones Act (1920), amending § 20 of the
LaFollette Act (38 Stat., §§ 1164, 1185), and providing that a
seaman, injured in the course of his employment, "may, at his
election," maintain an action for damages at law, with right to
trial by jury, under laws applicable to railway employees, an
election to sue at law does not waive the right to wages, mainte-
nance and care under Admiralty law, receipt of which does not
bar further recovery for his injuries at law; the election granted
being between a libel without jury for wages, maintenance and
care, and for indemnity when justified, or a law action for negli-
gence with a jury trial.

[2] COURTS (64)—MASTER AND SERVANT (20-2)—FEDERAL LIABILITY
ACT AND OTHER STATUTES — LIABILITY — SEAMEN — CONCURRENT
JURISDICTION OF FEDERAL AND STATE COURTS.  Under the fore-
going amendments, supplementing the maritime law and extend-
ing the rights of seamen to those of railway employees, there
are not two distinct and diverse systems of law governing such
personal injuries, but one uniform country-wide system, subject
to the concurrent jurisdiction of the Federal and state courts.

[3] MASTER AND SERVANT (46) — NEGLIGENCE — PLACES OF WORK —
SHIPPING—EVIDENCE—SUFFICIENCY.  The negligence of the officer
in command, in ordering a crew on deck to secure a deck load
that had broken loose in a storm, is a question for the jury,
where it appears that there was a high sea, that he refused to
slow down or heave to, which would have lessened the seas that
were being shipped, or to stretch a life line, which should have
been done, according to the testimony of experts, and his failure
to do so resulted in plaintiff's injury.

[4] DAMAGES (84)—EXCESSIVE DAMAGES—INJURY TO KNEE.  A ver-
dict for $25,000, reduced by the trial court to $12,500, for in-
juries sustained by a seaman, will not be held excessive, where
plaintiff, a seaman of 21 years experience, 36 years old, earning
nearly $2,000 a year, sustained a permanent injury to his knee
which kept him in a hospital sixteen months and prevents

[1]Reported in 261 Pac. 115.

further occupation on the sea, the only one for which he is fitted.

Appeal from a judgment of the superior court for King county, Findley, J., entered March 7, 1927, upon the verdict of a jury rendered in favor of the plaintiff, for personal injuries sustained by a seaman while on a voyage. Affirmed.

*Grosscup, Morrow & Wallace* and *J. O. Davies,* for appellant.

*Harry Ellsworth Foster,* for respondents.

HOLCOMB, J.—Within two years after an alleged injury, respondent brought an action against appellant to recover the sum of $56,360 damages for personal injuries, claiming that he was injured on December 20, 1924, while acting as articled boatswain on the "Admiral Dewey," a steamship owned and operated by appellant, while voyaging from Seattle to San Francisco. The injury alleged is to respondent's left knee. He claims that the injury was due to the negligence of the mate of the vessel in ordering him to secure a cargo on the deck of the vessel during a heavy storm, by reason of having failed to cause the vessel to "heave to" or slow down, and in failing to have life lines put up while he and the crew were securing the cargo.

Respondent alleges that the action was brought under § 20 of the act of Congress of March 4, 1915, as amended by § 33 of the act of June 5, 1920, known as the Merchant Marine or Jones Act.

Appellant answered, denying that the action was brought under the so-called Jones Act, and setting up affirmatively in its denials, and by way of separate affirmative defense, that, prior to the bringing of the action by respondent, he had elected to and did take compensation for the injuries received under the gen-

eral admiralty law, in existence at the time of the injury and prior to the enactment of the Jones Act, and had received from appellant full and complete compensation for the injury under the maritime law. It is alleged that he could not elect to take compensation for his injuries under the Jones Act, and then maintain suit under that Act for such injuries.

Respondent, in the court below, moved to strike the affirmative allegations in the answer of the appellant, and demurred to the separate affirmative defense. The court granted the motion to strike and sustained the demurrer, allowing appellant to file an amended answer. Appellant filed an amended answer, purporting to set up more in detail the same defenses. Respondent again moved to strike the amended answer, which was granted. The cause was then tried in the lower court on the complaint and the general and special denials contained in appellant's original answer. Upon trial, the jury rendered a verdict in favor of respondent for $25,000, which, upon a motion for a new trial, the court ordered be reduced to $12,500, or, in the alternative, a new trial would be granted. Within the time required by the order, the respondent remitted the $12,500, whereupon judgment was entered thereon.

At the trial, appellant submitted instructions, which were refused by the trial court, to the effect that plaintiff had received compensation for his injuries under the maritime law and could not, therefore, recover under the Jones Act. Appellant also moved for a directed verdict upon the same grounds, which motion was denied; and in a motion for judgment *non obstante veredicto,* the same contention was urged, without success.

While there is some conflict in the evidence, the case made by respondent, conforming to the allegations of

his complaint and which the jury were entitled to believe, was, in substance, as follows:

The ship, while on the voyage, had on board a deck cargo of clams and oysters in cases, lashed on the aft port quarter. Heavy weather was encountered on the morning of December 20, and about eight o'clock in the morning the deck cargo came adrift, and respondent, as boatswain, was ordered by the chief officer to take the crew back and secure the cargo. Respondent testified that he protested, insisting that it was not safe, that the ship ought to be slowed down or ''hove to'' in order for the men to work there.

The vessel was then shipping green water, and if it was slowed down and hove to, the seas would not break over the ship, but it would be right on top of the sea, and if a life line were stretched, the men would have something to hold onto. The ship was then making from six to eight miles per hour, which, under the conditions of wind and weather, was too great speed. It was not slowed down or hove to, and no life lines were stretched.

When respondent and his crew got to the cargo, the flagstaff was found displaced, and to prevent it from falling on the men while at work, they started to remove it; and while in the act of removing it, the vessel shipped a heavy sea, throwing a heavy box against respondent, which jammed his knee up against the rudderhead. The injury caused the knee to swell so badly that his trousers had to be cut off. His knee was found to be badly cut and injured. There is evidence on behalf of respondent, not only by his shipmates, but also master mariners of many years' experience, that, under such circumstances, life lines should have been stretched; and that the ship should have been slowed down somewhat, although it was necessary, in

order to have steerageway, to maintain a speed of from two to three miles an hour.

There was some testimony showing that respondent was permanently incapacitated from again engaging in any work requiring him to be upon that knee, because the condyle, or head of the tibia is fractured clear across, causing a drop of from one-fourth to three-eighths of an inch, so that the head of the fibula projects above it, making the knee unstable and wobbly, and necessitating the wearing of a hinged steel brace on it, permanently.

At the time of the injury, respondent was thirty-six years of age, had followed the sea twenty-one years prior to the injury, and had a life expectancy of thirty-one and seven-tenths years. He was earning at the time eighty dollars per month, with six per cent of his annual salary as bonus, and his board and room in addition, which he valued at a dollar and a half per day for board, and fifty cents per day for lodging, which amounts were allowed when the ship was in port. It cost respondent at least two dollars a day to get the same board ashore. His annual earnings, therefore, will be seen to be about $1,917, or about one hundred and sixty dollars a month.

When the ship arrived in San Francisco, respondent was immediately taken to the U. S. Marine Hospital, where he remained from December 22, 1924, to April 3, 1926, about sixteen months all together, during which time he lost in wages about thirteen hundred dollars.

The knee was painful to respondent up to October, 1925. An operation had been performed at the marine hospital shortly after respondent was taken there, and a second operation was performed in October, 1925. There is little doubt but that, according to the evidence, respondent will never again be able to follow

the sea as an occupation, and there is no other occupation for which he is fitted.

The negligence alleged and testified to consisted of:

(1) That the order of the mate to lash the cargo was a negligent order under the circumstances; (2) that it was negligence on the part of defendant to fail to have the ship hove to or slowed down; and (3) that it was negligence to fail to have life lines put up before respondent undertook to lash the cargo.

The primary question to be determined, as stated by appellant, is: Can a seaman who has received a personal injury in the performance of his duties, while on a ship, after having received full compensation for such injury under the general maritime law, thereafter maintain an action and recover full damages for the same injury under the common law, as modified by the statutes of the United States relating to railroad employees?

Appellant contends that the law governing the relation of seamen to the ship and its owner, as it exists today under the old rules, was laid down in the case of *The Osceola,* 189 U. S. 158. In that case, after a careful research, the United States supreme court summarized the law as follows:

"(1) That the vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued.

"(2) That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship. . . .

"(3) That all the members of the crew, except perhaps the master, are, as between themselves, fellow servants, and hence seamen cannot recover for injuries

sustained through the negligence of another member of the crew beyond the expense of their maintenance and cure.

"(4) That the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received by negligence or accident."

[1] Since this case is brought under the merchant marine act, as amended in 1920 [41 Stat. 1007], and the Federal statutes and decisions, so far as any decisions can be found which are applicable, are controlling, it is well, for a proper understanding of the case, to give a short history of the evolution of the law upon the matter. The question is Federal, but state courts have concurrent jurisdiction. *Panama R. R. Co. v. Johnson,* 264 U. S. 375; *Panama R. R. Co. v. Vasquez,* 271 U. S. 557.

Under the old law, as enunciated in *The Osceola, supra,* a seaman could not recover damages for personal injuries except when they were the result of the unseaworthiness of the ship. Congress undertook to give the seamen greater rights and put them upon a parity with railroad employees by the passage of the merchant marine act of 1915, commonly called the La Follette Act [38 Stat. 1164, 1185], § 20 of which is:

"That in any suit to recover damages for an injury obtained on board vessel or in its service seamen having command shall not be held to be fellow-servants with those under their authority."

. That enactment, it was thought, would eliminate the rule as to non-liability from negligence of fellow-servants which prevailed in maritime law, because it was thought that seamen were extended the same protection in case of personal injury that was afforded railway employees under the Federal employers' act. But the supreme court, in *Chelentis v. Luckenbach S. S. Co.,*

247 U. S. 372, held that § 20, above quoted, was not intended to substitute the common-law measure of liability for the maritime rule in such cases. Consequently, Congress, in order to accomplish its purpose, enacted the Jones Act of 1920. That, so far as it is material here, is in § 33, amending § 20 of the La Follette Act, and reads:

"That any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply. . . . ."

Prior to the amendment of 1920, the courts very generally held that, in cases where compensatory damages could be recovered by a seaman for personal injury, he might also have his contractual right to wages, maintenance and cure. *Roebling's Sons Co. v. Erickson,* 261 Fed. 986; *Wagstaff v. United States,* 281 Fed. 877. And it was generally held by Federal courts that a decree, even for wages, maintenance and cure is not a bar to an action for compensatory damages. *The Heaton,* 43 Fed. 592; *Olson v. Whitney,* 109 Fed. 80; *The Troy,* 121 Fed. 901; *The Hanna Nielsen,* 273 Fed. 171; *The West Jester,* 281 Fed. 877; *The Rolph,* 299 Fed. 52; *Roebling's Sons Co. v. Erickson, supra; Cresci v. Standard Fisheries,* 7 Fed. (2d) 378.

Such recovery was generally put upon the ground, as stated in *The Heaton, supra,* that

"Courts of admiralty have always considered seamen as peculiarly entitled to their protection. Seamen may recover their wages by libel *in personam* against either the owners or the master, or by libel *in rem* against the ship. . . . A seaman, taken sick or injured or disabled in the service of the ship,

has the right to receive his wages to the end of the voyage, and to be cured at the ship's expense. That right, indeed, grounded solely upon the benefit which the ship derives from his service, and having no regard to the question whether his injury has been caused by the fault of others or by mere accident, does not extend to compensation or allowance for the effects of the injury; but it is in the nature of an additional privilege, and not of a substitute for or a restriction of other rights and remedies. [Citing cases.] It does not, therefore, displace or affect the right of the seaman to recover against the master or owners for injuries by their unlawful or negligent acts.''

See, also: *Holt v. Cummings,* 102 Pa. St. 212; *Scarff v. Metcalf,* 107 N. Y. 211, 13 N. E. 796; *Whitney v. Olsen,* 108 Fed. 292; *The Iroquois,* 113 Fed. 965; *Leon v. Galceran,* 11 Wall. (U. S.) 185; *Sanders v. Stimson Mill Co.,* 32 Wash. 627, 73 Pac. 688.

In the case of *The Rolph, supra,* decided by the circuit court of appeals for this circuit, it was held that the right to wages, maintenance and expenses of cure so far as possible, existed under any and all circumstances, unless there was wilful misconduct; that the right to recover indemnity was a separate matter; that the decree for wages could not be imposed against his demand for damages; citing *The Heaton, supra.*

Some of the foregoing decisions by the Federal courts, and others also, say that the right to wages, maintenance, and cure was as positive as the right to food while on a voyage, and that it was a matter of contract, arising out of the articles of seamanship.

From those decisions, and others which have been read, it would seem that it would be very difficult for a seaman, under the old rules, even to waive in advance the right to wages, maintenance and cure, at least so far as possible, when injured, whether with or without his fault, except for wilful misconduct or the grossest of negligence.

It is manifest that, by the amendment of 1920 to the merchant marine act, Congress bodily picked up the common law, as modified and applied to interstate railway employees, and incorporated it into and made it a part of the maritime law applicable to the relations of seamen and shipowners.

But as to this, appellant contends that no attempt was made by Congress to repeal, or in any wise change or modify, the law then existing governing the relation of the seaman to the ship and its owner at the time of the enactment of the amendment; and that the law, as announced in *The Osceola, supra,* is still in force and effect. It is then said that, as a result of the amendment, we have, as a part of the maritime law, two separate, distinct and diverse systems of law governing the rights of seamen receiving personal injuries. This, we think, is a *non sequitur.* It is true that, in the amendment, Congress said that the seaman may have one or the other of the remedies at his election. In this case it is contended that, by sustaining the ruling of the trial court, the plain, unambiguous language of the statute of the United States would be changed to read as follows:

"That any seaman who has suffered personal injury in the course of his employment may, after having received full compensation for such injury under the general admiralty or maritime law as it now exists, maintain an action for damages at law, etc."

The question is really a very narrow one, and is, what is the meaning of the provision giving the seaman, "at his election," one right of remedy, or another? The substance of the amendment under discussion is that any seaman who shall suffer personal injury in the course of employment may, at his election, maintain an action for damages at law, with the right of trial by a jury, and in such action all statutes

of the United States modifying or extending the common-law right of remedy in the case of personal injury to railway employees shall apply.

What must the seaman elect, if injured in the course of employment? Here, according to the complaint, he does not allege unseaworthiness of the vessel; he complains of negligence on the part of the officer in command under stated circumstances. He suffered personal injury. Under all the decisions, he was entitled to wages and maintenance, at least to the end of the voyage, and cure, if possible. That was accorded him by paying him the small amount of wages due to the end of the voyage and taking him for care and treatment to the United States Marine Hospital. He did not reject the treatment and care at the hospital but accepted it so long as it seemed necessary and proper. Courts take cognizance of the statutes of the United States providing for the maintenance of marine hospitals and of the existence of the marine hospital service, where seamen may be treated at minimum expense, or, in proper cases, free of cost. *The Bouker No. 2*, 241 Fed. 831; *Holt v. Cummings, supra.*

Nor is it permissible for the person, entitled to care from his ship and equally entitled to have that care bestowed in a marine hospital, to deliberately refuse the hospital privilege, and then assert a lien upon his vessel for the increased expense which his whim or taste has created. *The Bouker No. 2, supra.*

Under the circumstances shown in this case, no action was necessary on the part of respondent to recover the wages, maintenance and cure always accorded to seamen under the old law prior to the Jones Act. Had such allowances not been made him, undoubtedly he could have instituted an action, either in admiralty *in rem* or *in personam;* or he could have instituted an action like the present, to include it all.

The election granted the seaman for injury in the course of employment is an election between a libel (without right to jury, but with certain advantages) for wages, maintenance and cure, if such be necessary, and for indemnity, if the circumstances justify such action, arising by reason of the unseaworthiness of the vessel or its appurtenances; or, a law action for damages for actionable negligence and a jury trial. *Panama R. R. Co. v. Johnson*, 264 U. S. 375.

If no action for injuries arising from unseaworthiness of the vessel, or its appurtenances, or from any action occasioning injuries to the seaman, regardless of whether he was at fault or not, for wages to the end of the voyage and maintenance and cure, can be brought, is it to be reasonably presumed that § 33 of the Jones Act, amending § 20 of the La Follette Act, precludes the seaman from bringing such action for damages caused by negligence of the shipowner or its officers? Suppose that he had died from the effects of negligent injury, at the very hour the voyage ended and after his reception of proper medical and hospital care aboard ship and his wages to that moment: Could it reasonably be held that his heirs or representatives would be bound by such an election so that they could maintain no law action for damages for the injury?

[2]. Nor can we give assent to the view of appellant that there are two separate, distinct and diverse systems of law governing the rights of seamen receiving personal injuries under the Jones Act. We think that question has been conclusively determined by the supreme court of the United States in *Baltimore S. S. Co. v. Phillips*, U. S. Adv. Ops. 1926-27, p. 701.

In that case, a seaman, injured aboard a vessel, as the result of which he lost a leg, first filed a suit in admiralty to recover damages in the sum of fifteen thousand dollars in the United States district court.

After making several specifications of negligence, he sought by an amendment to further specify the negligence, and also prayed that, if negligence should not be established, he have a decree for wages, maintenance and cure. The district court held that the evidence of the negligence on the part of the defendants was such that no recovery of damages could be had for negligence; but the libelant was awarded the sum of five hundred dollars, as the cost of maintenance and cure, which sum was paid and the decree satisfied. *Phillips v. United States,* 286 Fed. 631.

Subsequently, another action was brought in the supreme court of New York, the United States not being joined, which was removed to the Federal district court for the eastern district of New York. The complaint in that action alleged negligence on the part of the defendants, their officers and employees, in substantially the same way as in the libel in the first case. Defendants answered, setting up the decree in the admiralty case as *res judicata* which was first sustained, and afterwards, on re-argument, reversed and the plea held bad. A trial resulted in a verdict and judgment for respondent. The circuit court of appeals affirmed the judgment, holding, in regard to the plea of *res judicata,* that the second action was based upon a different cause of action. *Baltimore S. S. Co. v. Phillips,* 9 Fed. (2d) 902. The supreme court reversed the circuit court of appeals, for the reason that the first cause of action in the admiralty court, in which the judgment was satisfied, and the second cause for damages for the same negligence, were "one and indivisible," and that,

". . . plaintiff's claim for damages having been submitted and passed upon, the effect of the judgment in the admiralty case as a bar is the same whether resting upon an erroneous view of the law or not."

But, in passing upon the case, the supreme court said, referring to § 33 of the Act of 1920, amending § 20 of the Act of 1915:

"That amendment incorporates into the maritime law the provisions of the Federal Employers' Liability Act [April 22, 1908] ch. 149, 35 Stat. at L. 65, U. S. C. title 45, § 51; and the effect by virtue of § 1 of that act is to give a right of action for an injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of the ship, as well as for an injury or death resulting from defects due to negligence, etc., and irrespective of whether the action is brought in admiralty or at law. *Panama R. R. Co. v. Johnson,* 264 U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748; *Engel v. Davenport,* 271 U. S. 33, 46 S. Ct. 410, 70 L. Ed. 813; *Panama R. R. Co. v. Vasquez,* 271 U. S. 557, 46 S. Ct. 596, 70 L. Ed. 1085.

"It follows that here both the libel and the subsequent action were prosecuted under the maritime law, and every ground of recovery, open to respondent in the second case, was equally open to him in the first. But evidently in the first proceeding both court and counsel misinterpreted the effect of section 33, and proceeded upon the erroneous theory, that in admiralty the rule laid down in *The Osceola,* 189 U. S. 158, 175, 23 S. Ct. 483, 487 (47 L. Ed. 760), 'that the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received by negligence or accident,' *was still in force.* [Italics ours.]   Otherwise, it is quite apparent from the language of the opinion that an amendment would have been sought and allowed, pleading the ground of negligence afterwards set up in the second action." *Baltimore S. S. Co. v. Phillips,* U. S. Adv. Ops. 1926-27, p. 701.

In *Panama R. R. Co. v. Johnson,* above cited, the court held that,

"The Merchant Marine Act is the exercise of the power of Congress to alter or supplement the maritime law by changes that are country-wide and uni-

form in operation, and that it brings into the maritime law new rules drawn from the Employers' Liability Act and its amendments, adopted by the generic reference to 'all statutes of the United States modifying or extending the common law right or remedy in cases of personal injuries to railway employees,' and 'extends to injured seamen a right to relief accorded by the old rules;' that is, that it grants them as an alternative the common-law remedy of an action 'to recover compensatory damages under the new rules as distinguished from the allowances covered by the old rules,' which, as a modification of the maritime law, may be enforced through appropriate proceedings *in personam* on the common law side of the courts.''

Appellant seizes upon the above language to the effect that the amendment of 1920 grants to injured seamen, as an alternative, the common-law remedy of an action to recover compensatory damages under the new rules, as distinguished from the allowances covered by the old rule.

It was also held in *Engel v. Davenport,* 271 U. S. 33 (cited in the *Phillips* case, U. S. Adv. Ops. 1926-27, p. 701) that state courts have jurisdiction concurrently with the Federal courts to enforce the right of action established by the Merchant Marine Act as part of the maritime law; and that, in such an action against a shipowner for damages for injuries alleged to have resulted from the owner's negligence, being an action under the merchant marine act, as supplemented by the employers' liability act, it was incumbent upon the plaintiff to prove negligence and subject himself to a reduction of damages in proportion to any contributory negligence on his part.

It was also held in *International Stevedoring Co. v. Haverty,* 272 U. S. 50, that the act of 1920 extended to a longshoreman employed in stowing freight in the hold of a ship, who was accordingly held a seaman and entitled to the benefits of the provisions of that act in

an action at law for damages. This court had previously so held in the same case, 134 Wash. 235, 235 Pac. 360, 238 Pac. 581.

In the *Vasquez* case, cited in the *Phillips* case, *supra,* the supreme court said:

"The procedural provisions therein [of the Merchant Marine Act] have been construed—when read in connection with §§ 24 (third) and 256 (third) of the Judicial Code, and in the light of constitutional rules respecting admiralty and maritime jurisdiction—to mean that the new substantive rights may be asserted and enforced either in actions *in personam* against the employers in courts administering common-law remedies, with a right of trial by jury, or in suits in admiralty in courts administering remedies in admiralty, without trial by jury; but always taking the changed maritime law as the basis and measure of the rights asserted. *Panama R. R. Co. v. Johnson,* 264 U. S. 65."

A very recent Federal case strongly relied upon by appellant, (*Kuhlman v. Fletcher Co.,* 20 Fed. (2d) 465, C. C. A. 3rd Ct.), does not seem apt. In it, plaintiff first brought an action at law for damages for personal injury by negligence. He then attempted to change his action, by motion, to a libel in admiralty, but for the same relief. The court held, as we would, that he had once decisively elected to pursue the law remedy, was bound thereby and could not make another election. That is legally logical, but entirely different from this case. See: *Rose v. Rundall,* 86 Wash. 422, 150 Pac. 614; *Behneman v. Schoemer,* 141 Wash. 560, 252 Pac. 133.

Surely, the injured seaman should not be held to have elected his remedy by accepting so positive a matter-of-course duty on the part of the shipowner toward him as wages, maintenance and cure, which he is entitled to receive under any and all circumstances, except for misconduct. It does not appear that the

amendment of 1920 was intended to restrict in any way the seaman's rights as they previously existed, and, as has been shown, it was well settled, before the adoption of the amendment by Congress, that the seaman was not required to elect between a claim for indemnity and a claim for maintenance and cure, but might in one action demand and recover both. *Flynn v. Panama R. Co.*, 121 Misc. Rep. 239, 201 N. Y. Supp. 56.

We therefore conclude that respondent was not estopped by any election.

[3] The next contention made by appellant is that no negligence was shown on its part which resulted in the injuries suffered by respondent. We think there was sufficient evidence on that question to go to the jury, and it was for the jury to determine.

[4] It is next contended that the damages, even as reduced by the trial court, were excessive, and that the allowance by the jury of twenty-five thousand dollars, and the reduction thereof by the trial court of one-half, manifests bias and prejudice on the part of the jury.

We have set out the gist of the nature of the injuries in the statement prefacing this opinion, and the age and earning capacity of respondent. We are satisfied that the award, as reduced by the trial court, is well within the evidence and our decisions. *O'Brien v. Griffiths & Sprague Stevedoring Co.*, 116 Wash. 302, 199 Pac. 291, (relied on by appellant) was a case where the injuries were not so severe and lasting nor the earning capacity so great as in this case. See, also, on the measure of damages: *Colquhon v. Hoquiam*, 120 Wash. 391, 207 Pac. 664; *Allison v. Bartelt*, 121 Wash. 418, 209 Pac. 863; *Brammer v. Percival*, 133 Wash. 126, 233 Pac. 311; *Jackson v. Mitsui & Co.*, 138 Wash. 124, 244 Pac. 385; *Elliott v. Roberts*, 141 Wash.

689, 252 Pac. 131; *Scott v. Pacific Warehouse Co.*, 142 Wash. 245, 255 Pac. 138; *Ekeberg v. Tacoma,* 142 Wash. 240, 252 Pac. 915.

We find no error justifying reversal, and the judgment is affirmed.

MACKINTOSH, C. J., FULLERTON, MAIN, and ASKREN, JJ., concur.