## MEYER v. DOLLAR S. S. LINE.
### No. 6293.

Circuit Court of Appeals, Ninth Circuit.

May 8, 1931.

Winter S. Martin, Arthur Collett, Jr., and Harry S. Redpath, all of Seattle, Wash., for appellant.

Hugh Montgomery and E. C. Kester, both of San Francisco, Cal., and John Ambler, of Seattle, Wash., for appellee.

Before RUDKIN, WILBUR, and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

This is an appeal from a final decree of the United States District Court for the Western District of Washington, Northern Division.

The facts of the case were not in dispute and were stated in a stipulation as follows:

"Bernard Meyer, libellant above named, aged 19, duly signed on the shipping articles of the S. S. President Cleveland, owned and operated by Dollar Steamship Lines, Inc., Ltd., and operated during all times mentioned in the libel herein by the respondent, on the 21st day of November, 1929, at San Francisco, California, for a voyage from said port to Manila, P. I., and return to the United States, said voyage consuming a period of approximately two months. The libellant worked at his usual duties until November 27th, 1929, the day before the arrival of the President Cleveland, at the port of Honolulu. At about 3:30 p. m. on said date, said libellant was on the after-port deck with a few of his shipmates, and entered into a good-natured scuffle with a fellow shipmate, in the course of which the libellant received a severe and painful injury to his leg. At said time libellant was off watch, and had not been drinking. Libellant was employed at wages of $72.50 per month, and his wages for the voyage totalled $130.50. The amount of wages due libellant up until the time he was left in Honolulu on November 28th, 1929, was $19.33. On said 28th day of November, 1929, libellant was, by order of the officers in charge of said vessel removed therefrom and entered at the hospital at Honolulu, which was necessitated by said injuries received as above mentioned. Said sum of $19.33 was tendered to Meyer as being the amount due him for this voyage, but said libellant refused this tender. Said libellant, before instituting the above proceeding demanded of respondent his wages for the voyage which to-

talled $130.50, which said demand was refused by the respondent. Said libellant did not earn any wages from the time of his said leaving said vessel at Honolulu until the end of said voyage, by virtue of any other employment.

"It is further agreed that said libellant has received at said hospital at Honolulu all maintenance to which he is entitled. That the only question in this case is whether said libellant is entitled to his wages to the end of said voyage; and, if so, is he entitled to the penalty of two days' pay for each day said wages have been withheld?".

On July 14, 1930, the lower court made and entered its final decree in said cause and allowed the appellant recovery of his wages from November 21, 1929, to November 28, 1929, and from January 2, 1930, the date on which appellant was released from the hospital in Honolulu, to January 13, 1930, a total sum of $43.44; the court denied appellant recovery of his wages for the time that he was in the hospital; and denied judgment for the penalty of double pay for withholding wages as provided for by U. S. Revised Statutes, § 4529 (46 USCA § 596).

The rule applicable in such cases was stated in the case of The A. Heaton (C. C.) 43 F. 592: "A seaman, taken sick or injured or disabled in the service of the ship, has the right to receive his wages to the end of the voyage, and to be cured at the ship's expense." Quoted with approval by the Supreme Court of the State of Washington in Peterson v. Pacific S. S. Co. (The Admiral Dewey) 145 Wash. 460, 261 P. 115, 118, 1928 A. M. C. 545, 551.

Later, this rule was given its final form by the Supreme Court when it said:

"Upon a full review, however, of English and American authorities upon these questions, we think the law may be considered as settled upon the following propositions:

"1. That the vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued." The Osceola, 189 U. S. 158, 23 S. Ct. 483, 487, 47 L. Ed. 760; see, also, Pacific Steamship Co. v. Peterson, 278 U. S. 130, 49 S. Ct. 75, 73 L. Ed. 220.

The point of importance in these statements of the rule is in the meaning to be attached to the phrase "in the service of the ship."

The peculiar nature of a sailor's occupation necessarily calls for a liberal interpretation of this phrase. A sailor cannot, like other workmen, divest himself of all his responsibilities to the company for which he works when his work for the day is done. For that reason, when the courts have been called upon to determine the bearing of the phrase "in the service of the ship" they have given it a wide range. "Courts of admiralty have always considered seamen as peculiarly entitled to their protection." The Heaton, supra. And more definitely: "We may state our opinion that a seaman 'falls sick, or is wounded, in the service of the ship,' if such misfortune attacks him while he is attached to the ship as part of her crew. It is not necessary that the wound or illness should be directly caused by some proven act of labor; it is enough that he was, when incapacitated, subject to the call of duty as a seaman, and earning wages as such." The Bouker No. 2, 241 F. 831, 833 (C. C. A. 2nd).

One exception is consistently made to a too wide extension of the phrase, namely, the person injured "in the service of the ship" must have acted "without gross negligence or gross misconduct on his part." Olsen v. Whitney (D. C.) 109 F. 80. No such allegation is made here, but the particular facts of the way in which the accident occurred must be considered. Appellant was off duty and was taking recreation; he was, as all sailors are, subject to call to duty in an emergency and was at the time "in the service of the ship." However, when he commenced his good-natured scuffling with his fellow shipmates the situation was changed. Appellant by his own volition created an extraneous circumstance; he brought about an intervening cause that directly affected his relation to his employers and to the ship. If the appellant had been sitting on a deck reading and something had accidentally fallen on his knee, thus causing an injury similar in type to that which actually occurred, it might be properly held that the accident had occurred "in the service of the ship." But the instant case must be differentiated therefrom.

The phrase "in the service of the ship," as applied to ordinary seamen, is closely analogous to the phrase "in the line of duty," as applied to soldiers or sailors in the service of the United States. The differences in the status of an ordinary seaman, for example, and that of a sailor are obvious at once, but there is a similarity in the narrow employer-employee relationship in both cases.

"Line of duty" is defined as follows: "A person in the active service and submitting to its rules and regulations is, in general, in the line of duty." Naval Courts and Boards; chapter XII, § 1022.

An injury suffered or a disease contracted by a sailor is considered to have been "in the line of duty" "unless it is actually caused by something for which he is responsible which intervenes between his service or performance of duty and the injury or disease. He will be responsible for an intervening cause if (1) it consists of his own wilful misconduct, or (2) it is something which he is doing in pursuance of some private avocation or business, or (3) it is something which grows out of relations unconnected with the service or is not the logical incident of provable effect of duty in the service." Ibid.

In an opinion of the Attorney General concerning the phrase "in line of duty" as interpreted under the provisions of the War Risk Insurance Act, 32 Ops. Atty. Gen. 12, 20, he said:

"Was that cause appertaining to, dependent upon, or otherwise necessarily and essentially connected with, duty within the line, or was it unappurtenant, independent, and not of necessary and essential connection? That, in my judgment, is the true test-criterion of the class of * * * cases under consideration. * * *

"This seems to mean that if he has stepped aside from the discharge of his duty as a soldier to exercise some private right or perform some private duty, though still in the service and violating none of a soldier's duties, and what he thus does causes injury or disease, there will have intervened an adequate and sufficient cause for which he is responsible and the injury can not be said to have been suffered in the line of duty. On the other hand, although at the time of receiving an injury he is actually exercising some private right or performing some private duty, it does not necessarily follow that he is precluded. If he is subject to military rules and regulations and, in general, performing his duty as a soldier and what he does, outside of this duty, does not contribute as a cause to bring about the injury, there has been no intervening cause and the injury is suffered in the line of duty.

"To illustrate, a soldier in camp may, during a rest hour, be employing his time by working on an invention wholly disconnected with the military service. He is, in general, in the line of duty, but at the moment is exercising a private right for private purposes. An explosion is produced by chemicals which he is using. There has intervened a cause for which he is responsible and the injury is not suffered in the line of duty. But while so employed he is struck by lightning, or becomes ill, or is suddenly stricken with appendicitis, clearly there has been no intervening cause for which he is responsible and the injury is suffered in the line of duty. In either case, what he was doing was in no way inconsistent with the performance of his military duty. While he was doing it the duties of a soldier still rested on him. He was not free of their obligations, nor was he necessarily deprived of the rights which grow out of their performance. This would result only in the event the thing he was doing, outside of his duty, in fact, caused the injury he received."

We think this reasoning and the example given are directly applicable to the instant case, and here as there the question of importance is whether or not there was an intervening cause for which appellant was solely responsible. If appellant, as we have said before, had been sitting quietly on the deck and something had fallen on his leg through circumstances entirely beyond his control, the injury might have been held "in the line of duty" or "in the service of the ship." Even if he had been scuffling and the same weight had fallen on his leg, the injury might have been held as incurred "in the service of the ship." But the actual case was quite different, for here the injury flowed directly from an intervening cause for which the appellant alone was responsible. Consequently, the injury cannot be held to have been incurred "in the service of the ship."

▌ Appellant contends that the withholding of his wages was in the nature of a penalty, but this does not appeal to us. Clearly, the seaman's act was not in the line of his duty and he was the author of his own misfortune.

The judgment of the lower court is affirmed.

WILBUR, Circuit Judge, concurs.